FARRELL v AUTO CLUB OF MICHIGAN

Docket No. 82916. Submitted January 7, 1986, at Grand Rapids. Decided October 8, 1986. Leave to appeal applied for.

Bruce Farrell filed an action in the Kent Circuit Court against his former employer, Automobile Club of Michigan, alleging that the termination of his employment as a sales representative from 1979 to 1982 constituted a breach of his employment contract with defendant and that defendant negligently conducted the evaluation of plaintiff's performance which led to his dismissal. The trial court, George R. Cook, J., granted defendant's motion for a directed verdict regarding plaintiff's negligent evaluation claim, but denied a similar motion regarding the breach of employment contract claim, and denied motions for judgment notwithstanding the verdict, a new trial, and remittitur of the jury's $150,000 award to plaintiff. Defendant appealed.

The Court of Appeals *held:*

1. Plaintiff's evidence consisting of: (1) the parties' stipulation that prior to 1981 defendant had not enforced any sales quotas on its sales representatives, (2) statements made by a branch manager at the commencement of plaintiff's employment that his responsibility was to sell some insurance, (3) a sales rules manual plaintiff received at the commencement of his employment which provided that he was required to sell some insurance as a condition of continued employment, but which did not provide for a sales quota, and (4) statements by a regional manager that minimum sales quotas which were being negotiated in defendant's Detroit offices would not apply to plaintiff's Grand Rapids office, viewed along with evidence presented by defendant in rebuttal in the light most favorable to plaintiff,

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 357, 374.

Am Jur 2d, Master and Servant §§ 14 *et seq.,* 34, 43.

Am Jur 2d, Statute of Frauds §§ 517, 518.

Am Jur 2d, Trial §§ 469 *et seq.,* 489 *et seq.*

See the annotations in the Index to Annotations under Direction of Verdict; Labor and Employment; Statute of Frauds; Summary Judgment.

sufficiently established that reasonable minds could honestly have reached different conclusions regarding plaintiff's claim that his dismissal violated a provision contained in the contract for termination only upon good cause. Therefore, the question was one for the jury to determine and the trial court properly denied defendant's motions for a directed verdict and judgment notwithstanding the verdict.

2. The trial court did not abuse its discretion in denying defendant's motion for a new trial which was based on plaintiff's failure to fully comply with defendant's discovery requests.

3. The trial court did not abuse its discretion in allowing plaintiff to modify his proposed jury instructions after the presentation of evidence so as to conform with the evidence and issues presented at trial. Furthermore, plaintiff's revised, proposed jury instructions properly stated relevant case law regarding employment contracts and other issues related thereto.

4. The trial court erred by failing to instruct the jury to reduce any award of future damages to their present value. A remand is therefore necessary to reduce any award of future damages to their present value.

Affirmed in part and remanded.

1. MOTIONS AND ORDERS — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

The Court of Appeals, in reviewing a trial court's refusal to grant a defendant's motion for a directed verdict or judgment notwithstanding the verdict, examines the evidence and all legitimate inferences that may be drawn therefrom in the light most favorable to the plaintiff; if the evidence, when viewed in this manner, would have permitted a reasonable jury to reach different conclusions, then the motion should have been denied by the trial court since neither the trial court nor the Court of Appeals may substitute its judgment for that of the jury.

2. FRAUDS, STATUTE OF — CONTRACTS — ORAL CONTRACTS.

The statute of frauds is not violated by an oral contract which may be completed in less than one year, even though it is probable that the contract will extend for a period of years (MCL 566.132[a]; MSA 26.922[a]).

3. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — DISCHARGE FROM EMPLOYMENT.

A provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable even though the contract is for an indefinite term;

such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

4. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — PERSONNEL POLICIES.

The question of whether there was a reasonable and legitimate expectation in an employee that the employer's policy or practice was a term of an employment contract, which bears directly on the question of whether the employer was free to change the policy or practice unilaterally, is a question for the trier of fact.

5. MOTIONS AND ORDERS — DISCOVERY — SANCTIONS — APPEAL.

A trial court's imposition of sanctions on a party for failure to comply with a discovery order is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of such discretion.

*Schenk, Boncher & Prasher* (by *Gary P. Schenk* and *Fred D. Hartley*), for plaintiff.

*Fox & Grove* (by *Kalvin M. Grove* and *Steven L. Gillman*), and *Finkel, Whitefield & Selik* (by *Robert J. Finkel*), for defendant.

Before: R. M. MAHER, P.J., and ALLEN and R. R. LAMB,* JJ.

PER CURIAM. In this breach of employment contract case, defendant appeals as of right from a November 30, 1984, judgment entered pursuant to a $150,000 jury verdict in favor of plaintiff.

Plaintiff is a former sales representative employed by defendant and compensated by commissions in Grand Rapids since October, 1976. He was required to sell defendant's insurance products and serve the company's customers. On May 21, 1982, plaintiff's employment was terminated by defendant for failure to fulfill the company's mini-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mum production requirements for sales employees paid by commissions. Prior to termination, he received a number of warnings informing him that his level of production was unacceptable. Upon termination, he was offered a salaried sales position with defendant as a member advisor, but he rejected it on the grounds that it was a demotion because the position paid less and the hours were more structured as compared with his former sales representative position.

On October 8, 1982, plaintiff filed the instant suit against defendant, alleging that the termination of his employment constituted a breach of his employment contract with defendant.[1] Plaintiff also alleged that he was evaluated by defendant in a negligent fashion. He claimed that the terms of his employment contract with defendant only allowed defendant to terminate his employment for good cause. He alleged that the termination was not for good cause because his employment contract never contemplated that he would have to adhere to a minimum production level as a condition of continued employment. Rather, he alleged that a written sales manual given to him upon commencement of his employment and oral representations made to him during the course of his employment established the terms of his employment contract and only required him to service his "book" of insurance policies and to sell "some" additional insurance.

Defendant claimed that it had the right to impose additional requirements on its employees as a condition of continued employment. It argued that the imposition of a minimum production level upon plaintiff in September, 1981, constituted a

___

[1] See *Farrell v Auto Club of Michigan,* 148 Mich App 165; 383 NW2d 623 (1986), regarding plaintiff's attempt to receive unemployment benefits.

valid term of plaintiff's employment contract. Defendant has contested plaintiff's breach of contract suit on the grounds that it had good cause for terminating plaintiff's employment because plaintiff failed to meet required production levels.

Following a three-day jury trial, a jury verdict was entered in favor of plaintiff in the amount of $150,000. Defendant made post-trial motions for a new trial, judgment notwithstanding the verdict, and remittitur, all of which were denied by the trial court.

Defendant first claims on appeal that the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict. At the close of plaintiff's proofs at trial, defendant raised a motion for directed verdict on both plaintiff's breach of contract claim and negligent evaluation claim. Defendant contended that under *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), it had the right to unilaterally change its employment contract with plaintiff. The trial court granted defendant's motion for a directed verdict with regard to the negligent evaluation claim, but determined that, viewing the breach of contract claim in a light most favorable to plaintiff, there were sufficient facts to present plaintiff's claim to the jury. The trial court subsequently denied defendant's post-trial motions for a new trial and judgment notwithstanding the verdict on the same grounds.

In reviewing a trial court's refusal to grant a defendant's motion for a directed verdict or judgment notwithstanding the verdict, this Court properly examines the evidence and all legitimate inferences that may be drawn therefrom in the light most favorable to the plaintiff. *Matras v Amoco Oil Co,* 424 Mich 675, 681; 385 NW2d 586 (1986). See, also, *Caldwell v Fox,* 394 Mich 401,

407; 231 NW2d 46 (1975), aff'd on other grounds 395 Mich 903 (1975). If this Court determines that reasonable jurors could honestly have reached different conclusions, the motion should have been denied by the trial court. If reasonable jurors could have disagreed, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury. *Matras, supra,* p 682.

Plaintiff presented four pieces of evidence at trial to support his claim that defendant's written and oral representations to him had established an employment contract in which defendant agreed not to impose enforceable minimum production levels upon plaintiff.

The first piece of evidence consisted of the parties' stipulation that prior to 1981 defendant had not enforced any sales quotas on its sales representatives and had not dismissed or demoted any of its sales representatives for failure to achieve quotas or production standards. Secondly, plaintiff presented evidence that his branch manager, Mr. Fennech, had informed him at the time he was hired that his responsibility was to sell some insurance and to make his "book" of insurance grow. According to plaintiff, Fennech told him at the time of his hiring that he need only handle his book of business, sell some insurance and he would be set financially for the rest of his life if he worked at it for three or four years. Thirdly, plaintiff established at trial that at the time of his hiring Fennech handed him a Sales Rules Manual which provided that he was required to sell some insurance as a condition of continued employment, but which did not refer to a quota or minimum level of sales that he was required to meet. Plaintiff testified that the only requirements imposed by the Manual were that he produce some new business, memberships and insurance. Finally, plaintiff

also presented evidence to the effect that at the time defendant's employee union in Detroit was negotiating with defendant, regarding a new contract with defendant which included minimum sales production requirements, the regional manager, Mike Mallott, informed plaintiff that he need not be concerned about the union contract because it would not apply to the Grand Rapids employees. According to plaintiff, Mallott told him that if the union contract contained something better than what the employees currently had, the Grand Rapids employees would also be benefitted, but if it contained something worse, it would not affect them.

Regarding the union negotiations, plaintiff also contends in his supplemental brief on appeal that defendant instituted a policy requiring its sales staff to meet a monthly sales quota only after negotiations had stalemated with its employee union in the metro-Detroit area. Plaintiff points to the case of *Bullock v Automobile Club of Michigan,* 146 Mich App 711; 381 NW2d 793 (1985), lv gtd, 425 Mich 871 (1986). As discussed *infra, Bullock* is similar in its facts to the instant case. The plaintiff in *Bullock* was hired by the same defendant as here as a commissioned sales person. When he did not fullfil sales quotas imposed upon him following the union negotiations stalemate, his employment was terminated.

Based upon the above four pieces of evidence, plaintiff claimed that the 1981 minimum production requirements were not part of plaintiff's employment contract with defendant because defendant had previously agreed that it would not impose quota requirements upon plaintiff.

We will address defendant's counter-arguments to plaintiff's evidence individually. First, defendant claims that manager Fennech's remarks were im-

properly relied upon by the jury because they were void under the statute of frauds, not based upon any consideration and exceeded Fennech's authority as a manager. It is well-settled that where an oral contract may be completed in less than one year, even though it is probable that the contract will extend for a period of years, the statute of frauds is not violated. MCL 566.132(a); MSA 26.922(a); *Cowdrey v A T Transport,* 141 Mich App 617; 367 NW2d 433 (1985). Neither plaintiff nor defendant has claimed that the employment contract was one for a definite term. Although Fennech stated that if plaintiff performed satisfactorily for three to four years he would be set for life, there is no indication that the employment contract could not have been terminated during plaintiff's first year of employment if plaintiff had not performed satisfactorily. Hence, the agreement between the parties must be construed as one for an indefinite term not falling within the statute of frauds. *Toussaint, supra,* p 612; *Rowe v Noren Pattern & Foundry Co,* 91 Mich App 254, 257; 283 NW2d 713 (1979), lv den 409 Mich 880 (1980).

Regarding the Sales Rules Manual, defendant cites other provisions contained within the manual which state that the sales representatives must maintain an acceptable ratio of new business and comply with the rules established by defendant's agents. According to defendant, this establishes that the jury unreasonably relied upon the provisions of the Sales Rules Manual that plaintiff pointed to as evidence in reaching its verdict. Defendant also claims that Mallott's alleged representation to plaintiff was unreasonably relied upon by the jury because Mallott had no authority to make that representation and because there was sufficient evidence to establish that Mallott only made the remark in a "bull session" with plaintiff.

Viewing these claims in a light most favorable to plaintiff following *Matras, supra,* we find no clear error. These claims present only factual disputes with the evidence as presented by plaintiff. We find that plaintiff did present sufficient evidence to establish that reasonable minds could differ concerning the factual claims. The fact that defendant had never imposed such an enforceable quota requirement upon its sales representatives prior to 1981, combined with the oral representations allegedly made by Fennech and Mallott, viewed in light of the ambiguous terms of the Sales Rules Manual, results in our conclusion that plaintiff did present enough evidence to warrant presenting his factual claim to the jury and to support the jury's verdict.

As previously discussed, this Court has recently ruled in *Bullock, supra,* that a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable even though the contract is for an indefinite term. Such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements. The question of whether there was a reasonable and legitimate expectation in an employee that an employer's policy or practice was a term of an employment contract is a question for the trier of fact. *Bullock, supra,* p 721.

This Court also discussed in *Bullock* the fact that the Supreme Court in *Toussaint, supra,* provided that employers *can* make known to their employees that personnel policies are subject to unilateral changes. This Court interpreted *Toussaint* as holding that notice or knowledge of unilateral changes can be construed from the circumstances surrounding employment. The *Bullock*

Court reasoned that whether such notice or knowledge was ever given to an employee was a question for the trier of fact.

In the instant case, defendant has raised conflicting facts regarding the provisions of the Sales Rules Manual, the authority by which its employees, Fennech and Mallott, spoke with plaintiff and other factual disagreements with plaintiff's evidence. Defendant has not shown, however, that, viewing the evidence in a light most favorable to plaintiff, the jury could not have reasonably concluded in favor of plaintiff. We therefore do not find that the trial court erred in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict.

Defendant next contends on appeal that the trial court abused its discretion by refusing to grant a new trial for plaintiff's failure to fully comply with discovery requests. During the discovery period, defendant requested via its depositions and interrogatories to plaintiff that plaintiff disclose what oral and documented representations he was relying upon for his claims. Plaintiff, in his deposition, stated that there were numerous individuals including Fennech, his branch manager, who had made representations to him. In his answer to defendant's first interrogatories, plaintiff referred only to Fennech and the Sales Rules Manual as a basis for his claim.

However, pursuant to the trial court's pretrial order, plaintiff exchanged his list of proposed witnesses and exhibits that he intended to present at trial with defendant. This list included employees Mike Verdon and Al Wells and all of plaintiff's trial exhibits. The list was exchanged pursuant to the pretrial order ten days before trial.

On the first day of trial, defendant moved to exclude from evidence all of plaintiff's witnesses

and exhibits that were not disclosed to defendant during the discovery period. Plaintiff argued that he had just discovered many of the witnesses and exhibits shortly before trial, had informed defendant of the evidence via the list exchange pursuant to the pretrial order, and did not surprise defendant with any new evidence because defendant had known of the evidence at least ten days before trial and had much of the evidence in its own control. The trial court ultimately denied defendant's request for a new trial.

MCR 2.313(B), formerly GCR 1963, 313.2, provides a variety of remedies for a party's failure to respond to discovery orders. This Court has stated that the above provision is broad enough to permit a trial court to exclude evidence if the court believes that such action is an appropriate remedy for violation of discovery practice. *Kurczewski v State Highway Comm,* 112 Mich App 544, 549; 316 NW2d 484 (1982), lv den 414 Mich 957 (1982). However, the imposition of sanctions for failure to comply with a discovery order is a matter within the trial court's discretion. This Court will not reverse a trial court's decision not to exclude documents and evidence from trial absent a finding that the trial court abused its discretion. *Id.,* p 550. Defendant does not dispute the fact that each of the documents it objected to at trial appeared in plaintiff's list of trial exhibits and witnesses exchanged with defendant ten days prior to trial pursuant to the pretrial order. Although we find that ten days' notice prior to trial is arguably insufficient for proper preparation of a case, we do not find an abuse of discretion in the instant case.

Plaintiff testified that he did not expect to rely upon witness Verdon's testimony until shortly before trial. We do not find it was an abuse of discretion for the trial court to accept this as true.

The record shows that plaintiff agreed to allow defendant to interview Verdon and all other witnesses prior to commencement of trial. Regarding the testimony of witness Wells, who was a commissioned sales representative of defendant, defendant has not shown that Wells could not have been deposed at any time prior to trial. He was identified to defendant as a potential lay witness via plaintiff's list of proposed witnesses presented to defendant pursuant to the pretrial order.

Defendant further claims that it was surprised by the introduction of plaintiff's trial exhibits and that many of them were irrelevant. The majority of the documents presented by plaintiff to which defendant objected were letters and documents involving plaintiff's employment with defendant. These documents were equally within the control of defendant and should have been anticipated as a basic part of plaintiff's case. Defendant had possession of the majority of these documents itself. There are only two documents that are arguably prejudicial to defendant. One is plaintiff's own damage calculation, Exhibit No. 13. Regarding this document, however, it must be noted that the trial court gave defendant a full day to review the document before granting plaintiff's request to admit the damage calculations into evidence. The other document is plaintiff's Exhibit No. 16, which was a synopsis of plaintiff's production increase during his probationary period. This also was within defendant's knowledge because it was based upon defendant's own production reports. We therefore find that the trial court did not abuse its discretion because defendant was not surprised by these documents.

Defendant next claims that the trial court abused its discretion in failing to grant a new trial based upon plaintiff's revised proposed jury in-

structions after the close of evidence. We do not find any error in the trial court's allowing plaintiff to modify his proposed jury instructions after the presentation of the evidence so as to conform with the evidence and issues presented at trial.

The four jury instructions objected to by defendant are: (1) that the oral and written statements by an employer of its personnel policies, work rules and procedures can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements created contractual rights; (2) that an employer's oral statements, written personnel manual and the actual conduct of its policies and procedures can form the basis of an employment contract with an employee; (3) that a breach of an employment contract is objectionable at law and that oral promises made by an employer may negate or take away the effect of other statements or written disclaimers which are intended to absolve employers from liability for breach of employment contracts; and (4) that a provision of an employment contract which provides that employees shall not be subject to certain kinds of work rules may become part of a contract via express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's statements or in its conduct and the implementation of its personnel policies. The court instructed the jury that employers *can* make known to their employees that personnel policies can be subject to unilateral change by an employer, thereby avoiding any reasonable expectation in their employees that a particular policy will continue to remain in effect.

We find that these jury instructions properly followed the law as stated in *Toussaint, supra,* and *Bullock, supra.* We disagree with defendant that

any of these jury instructions led the jury to believe that an employer is obliged to maintain existing policies in force ad infinitum, that only oral policies can modify prior employment policies, and that an employer must expressly reserve its right to change an employment contract prior to modifying the contract. Instead, the court properly informed the jury that an employment contract can be modified via oral and written representations and by policies on the part of the employer. The court properly instructed the jury regarding unilateral changes of an employer as stated in *Bullock, supra.* We therefore do not find that the trial court erred in failing to grant defendant a new trial based on these jury instructions.

Finally, defendant claims on appeal that the trial court abused its discretion by refusing to grant defendant's motion for remittitur. We agree with defendant that the court improperly failed to instruct the jury on the issue of present value of future damages. We therefore remand this case to have this accomplished. See *Goins v Ford Motor Co,* 131 Mich App 185, 199-200; 347 NW2d 184 (1983), lv den 424 Mich 879 (1986); SJI2d 53.03. We need not discuss defendant's other grounds for arguing that the trial court erred in not granting remittitur.

Affirmed in part and remanded for reduction of future damages awarded to their present value.