DIXON v W W GRAINGER, INC

Docket No. 90046. Submitted August 5, 1987, at Detroit. Decided
December 28, 1987.

Elmarie Dixon brought an action in the Wayne Circuit Court
against W. W. Grainger, Inc., alleging, among other things,
breach of an employment contract and race and sex discrimina-
tion. The other allegations were disposed of before trial. Follow-
ing a jury trial, the court, Michael L. Stacey, J., granted
defendant a directed verdict on the remaining claims. Plaintiff
appealed.

The Court of Appeals held:

1. The court erred in granting defendant's motion for a
directed verdict on the breach of contract claim because ques-
tions existed concerning whether plaintiff was terminated from
employment or was laid off and concerning the terms of defen-
dant's leave of absence and layoff policies. Questions of fact
must be left for the jury's determination.

2. The court erred in granting defendant's motion for a
directed verdict on plaintiff's race and sex discrimination
claims. To avoid a directed verdict after the defendant in a civil
rights case presents a legitimate nondiscriminatory reason
rebutting plaintiff's prima facie case of discrimination, the
plaintiff must put forth factual allegations allowing the infer-
ence that the defendant had a discriminatory reason that was
more likely its true motivation or factual allegations that show
the defendant's proffered reason was unworthy of credence.
Plaintiff did present evidence raising a triable issue as to
whether defendant's proffered reasons were merely a pretext.

3. The court's admission of certain evidence not disclosed
during discovery was not an abuse of discretion and plaintiff
waived any resulting error by refusing a proffered mistrial.

4. On retrial, if the court excludes from evidence certain of

REFERENCES
Am Jur 2d, Civil Rights §§ 98 et seq., 154 et seq., 160 et seq., 507.
Am Jur 2d, Trial §§ 534, 537.
Racial discrimination in labor and employment—Supreme Court
cases. 28 L Ed 2d 928.
Application of state law to sex discrimination in employment. 87
ALR3d 93.

defendant's answers to interrogatories, it should support its ruling on the record.

Reversed and remanded.

1. TRIAL — DIRECTED VERDICTS.

A trial court should not direct a verdict for the defendant where, taking the evidence in a light most favorable to the plaintiff, a prima facie case is established; where material issues of fact exist upon which reasonable minds might differ, they are for the jury to decide.

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — RACE OR SEX DISCRIMINATION.

There are two approaches in Michigan for establishing a prima facie case of race or sex discrimination: to make a prima facie showing of discrimination under the disparate treatment theory, the one alleging disparate treatment must show that he was a member of the class entitled to protection under the Civil Rights Act and that, for the same or similar conduct, he was treated differently than one who was a member of a different race; to make a prima facie case under the intentional discrimination theory, the plaintiff must show that he is a member of the affected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him.

3. CIVIL RIGHTS — PRIMA FACIE CASE — BURDEN OF PROOF.

In civil rights cases, a plaintiff has made a prima facie case where there is enough evidence to create a rebuttable presumption of discrimination; the making of a prima facie case does not necessarily preclude entry of a directed verdict, since the burden then shifts to defendant to articulate some legitimate, nondiscriminatory reason for the apparent discrimination; when the defendant meets this burden, the plaintiff must then be given an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination.

4. CIVIL RIGHTS — DIRECTED VERDICT.

To avoid a directed verdict after the defendant in a civil rights case presents a legitimate nondiscriminatory reason rebutting plaintiff's prima facie case of discrimination, the plaintiff must put forth factual allegations allowing the inference that the defendant had a discriminatory reason that was more likely its

true motivation or factual allegations that show the defendant's proffered reason was unworthy of credence.

5. Pretrial Procedure — Discovery — Sanctions — Appeal.

The imposition of sanctions for failure to comply with a discovery order is a matter within the trial court's discretion; the Court of Appeals will not reverse a trial court's decision concerning the exclusion of evidence for failure to comply with a discovery order absent a finding of abuse of discretion.

6. Evidence — Appeal.

The admissibility of evidence is a question that rests in the trial court's discretion and the exercise of the court's discretion will not be overturned on appeal unless there has been an abuse of that discretion.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Janet M. Tooley*), for plaintiff.

*Damm & Smith* (by *F. R. Damm* and *Michael J. Tauscher*), and *Henry Galatz,* of Counsel, for defendant.

Before: J. H. Shepherd, P.J., and H. Hood and T. M. Burns,* JJ.

Per Curiam. Plaintiff brought suit against defendant W. W. Grainger, Inc., alleging breach of employment contract, race and sex discrimination, retaliatory discharge, and intentional infliction of emotional distress. Prior to trial, Grainger was granted partial summary disposition on all but the contract and discrimination claims. However, on December 17, 1985, following a three-day jury trial, Wayne Circuit Judge Michael L. Stacey granted a directed verdict in Grainger's favor on those claims. Plaintiff now appeals as of right, raising four issues. We reverse and remand for a new trial.

Defendant is a wholesale electronics distributor,

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

headquartered in Chicago, Illinois, with five branches in Michigan. Plaintiff was hired in the Detroit branch in July, 1975. Her duties included billing, invoicing, telephone sales and general office duties. In 1978, plaintiff moved to the Troy branch when the Detroit branch was closed and its operations relocated to Troy.

During plaintiff's employment with defendant, she took several medical leaves of absence. Plaintiff took a leave sometime in 1976, also from May through June of 1979, again from May, 1980, through January, 1981, and finally from March to April 27, 1981. When plaintiff returned to work on April 27, 1981, she was told that she was being laid off because there was no work available for her. Plaintiff asked if jobs were available in the warehouse or in counter sales positions but was told that women did not work in those positions. The instant suit followed.

I

Plaintiff first argues that the trial judge erred in granting defendant's motion for a directed verdict on plaintiff's breach of employment contract claim. We agree.

If the evidence, viewed in a light most favorable to plaintiff, establishes a prima facie case, a defense motion for directed verdict should be denied. If material issues of fact remain upon which reasonable minds might differ, they are for the jury. A plaintiff has the right to ask the jury to believe the case as presented to it, however improbable it may seem. *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389; 362 NW2d 293 (1984).

In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), the seminal case in Michigan on wrongful discharge,

our Supreme Court ruled that the oral and written statements of an employer could create contractual rights for an employee. Defendant concedes that plaintiff's job performance was satisfactory. Further, there was substantial testimony regarding plaintiff's damages, her inability to find full-time employment and her emotional injuries. Thus, the only remaining issue was the terms of the contract between the parties. *Rash v City of East Jordan,* 141 Mich App 336; 367 NW2d 856 (1985).

In granting defendant's motion for a directed verdict, the trial judge stated:

> Counsel, as far as this Court is concerned, the only competent testimony indicates that when the plaintiff returned from her medical leave in April of 1981, she was terminated because of lack of work. As per the written policy introduced as an exhibit in this case.
>
> * * *
>
> There is a total lack of credible evidence on the allegation of breach of contract.

We believe that the trial judge erred in granting defendant's motion for a directed verdict because questions of fact existed concerning whether plaintiff was terminated from employment or merely laid off and concerning the terms of defendant's leave of absence and layoff policies.

First, a question of fact existed concerning whether plaintiff was terminated pursuant to the leave of absence policy or laid off pursuant to the unwritten work reduction policy. Both Zigmund Jakubowski and Michael Balsey, defendant's Branch Operations Manager, testified that plaintiff was terminated pursuant to defendant's leave of absence policy. That policy provided that an em-

ployee returning from a medical leave would be given the same job or a comparable job, *if one were available* (emphasis supplied). Jakubowski and Balsey testified that plaintiff was terminated because defendant was undergoing a work force reduction following a period of poor sales and no position was available for her. However, plaintiff testified that Jakubowski told her she was being laid off because of the lack of work. This fact is significant because, according to plaintiff, layoffs were determined on a seniority basis. Plaintiff claims that she was laid off even though she had greater seniority than other workers who were not laid off. Thus, the jury must resolve this question of fact.

Second, if the jury determines that plaintiff was terminated pursuant to defendant's leave of absence policy, as defendant claims, it must next decide the terms of that policy. As noted, Jakubowski testified that the policy provided that an employee returning from a leave of absence would be given a comparable job, if one were available. However, plaintiff testified that her understanding of the leave of absence policy was that, when an employee returned to work following a medical leave, his or her previous job or a comparable job would be made available to the employee, according to seniority. According to plaintiff, she would not have been laid off had this policy been followed.

Similarly, if the jury determines that plaintiff was laid off, as she claims, it must decide the terms of defendant's layoff policy. Jakubowski and Balsey both testified that, at the time plaintiff was terminated, defendant had an unwritten layoff policy. The branch manager was to make ninety-day staffing projections. If layoffs were necessary, they were to be based upon employee skills, perfor-

mance and ability. Seniority was not a factor. However, as noted according to plaintiff, layoffs were to be based solely on seniority.

Accordingly, we conclude that the trial judge erred in granting defendant's motion for a directed verdict in light of the questions of fact that remained in the case. We remand the case to the trial court for a new trial on plaintiff's breach of employment contract claim.

II

Second, plaintiff claims that the trial judge erred in granting a directed verdict for defendant on plaintiff's race and sex discrimination claims. We agree.

Plaintiff's claim of race and sex discrimination is based upon the Civil Rights Act. That act states:

(1) An employer shall not:
(a) Fail or refuse to hire, or recruit or discharge, or otherwise discriminate against an individual with respect to employment compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202; MSA 3.548(202).]

In determining the substantive law in discrimination cases, it is appropriate to consider federal precedent. *Matras v Amoco Oil Co,* 424 Mich 675; 385 NW2d 586 (1986); *Meeka v D & F Corp,* 158 Mich App 688; 405 NW2d 125 (1987).

The burden and order of proofs in an employment discrimination case were stated in *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 252-253; 101 S Ct 1089; 67 L Ed 2d 207 (1981), reaffirming the holding of *McDonnell Douglas*

*Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  . . .  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

See also *Jenkins v Southeastern Michigan Chapter, American Red Cross,* 141 Mich App 785, 793; 369 NW2d 223 (1985).

In Michigan, a prima facie case of race or sex discrimination can be made in one of two ways, by showing disparate treatment or by showing intentional discrimination. *Jenkins, supra; Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641; 378 NW2d 558 (1985):

> "(1) Disparate treatment. To make a *prima facie* showing of discrimination, the one alleging disparate treatment must show that he was a member of the class entitled to protection under the act and that, for the same or similar conduct, he was treated differently than one who was a member of a different race. (2) Intentional discrimination. Here, plaintiff must show that he was a member of the affected class, that he was discharged, and that the person discharging him was predisposed to discriminate against persons in the affected class and had actually acted on that disposition in discharging him." [Citations omitted. *Jenkins, supra,* pp 793-794.]

Viewing the evidence in a light most favorable to plaintiff, we conclude that plaintiff established a prima facie case of race and sex discrimination under both theories. Plaintiff was a member of a protected class, a black female, and was treated differently at defendant's Troy office in that she was terminated for a lack of work when other whites and males with less seniority than she were retained. Further, plaintiff was the lone black female in the Troy office and there was evidence that the supervisors tolerated racial slurs and epithets directed at plaintiff, suggesting a predisposition to discriminate.

The fact that plaintiff established a prima facie case of discrimination is not enough, alone, to preclude a directed verdict because the term "prima facie case" has a different meaning in discrimination cases than that normally attached to it. *Bouwman v Chrysler Corp,* 114 Mich App 670, 679; 319 NW2d 621 (1982). As the *Bouwman* Court stated:

> In federal cases, the term "prima facie case" is used to mean that the plaintiff has provided enough evidence to create a rebuttable presumption of age discrimination. Federal discrimination cases do not use the term "prima facie case" in the other accepted sense, to wit, was sufficient evidence produced to allow the case to go to the jury. . . .
>
> * * *
>
> Once a plaintiff has established a "prima facie case", the burden shifts to the defendant, who must articulate some legitimate, nondiscriminatory reason for the employee's rejection or dismissal. Should the defendant meet this burden, the plaintiff must then be given an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were

not its true reasons, but were a mere pretext for discrimination. [114 Mich App 679.]

In the present case, defendant offered a legitimate, nondiscriminatory reason for plaintiff's dismissal, namely, lack of work. Testimony established that at the time of plaintiff's layoff, defendant was attempting to reduce its workforce due to slumping sales. In addition to plaintiff, defendant terminated two white males, one in February and the other in June, 1981. Further, in February, 1982, defendant laid off three additional employees, two white males and a white female.

Thus, the burden shifted to plaintiff to show that defendant's reasons were merely pretextual. As this Court noted in *Clark v Uniroyal Corp*, 119 Mich App 820, 826; 327 NW2d 372 (1982), to avoid a directed verdict after the defendant presents a legitimate nondiscriminatory reason rebutting plaintiff's prima facie case of discrimination,

> the plaintiff must put forth factual allegations to raise a triable issue of fact as to whether the proffered reasons were mere pretext. Thus, a plaintiff must present factual allegations allowing the inference that the defendant had a discriminatory reason that was more likely its true motivation or factual allegations that show the defendant's proffered reason was unworthy of credence. The plaintiff must set forth specific facts showing that there is a genuine issue for trial; conclusory allegations are insufficient to rebut evidence of nondiscriminatory conduct. [Citations omitted.]

In the present case, plaintiff presented evidence raising a triable issue of fact as to whether defendant's proffered reasons were merely a pretext. There was evidence that after plaintiff was laid off two white male employees were hired for the

warehouse. Further, there was evidence that other employees laid off after plaintiff were recalled before she was. Accordingly, we conclude that the trial judge erred in granting defendant's motion for a directed verdict.

III

Third, plaintiff claims the trial judge abused his discretion by admitting defendant's written leave of absence policy when the policy was not disclosed during discovery. Plaintiff claims she was prejudiced by the fact that the policy was not disclosed to her until her trial. However, since this case is being remanded for a new trial, any claim of prejudice by admission of the policy is now moot.

To assist the court should the issue arise again, we conclude that the trial judge did not abuse his discretion in admitting the document. MCR 2.313(B)(2)(b) does not require the exclusion of evidence not properly disclosed during discovery but instead grants the trial judge the discretion to exclude such evidence. The imposition of sanctions for failure to comply with a discovery order is a matter within the trial court's discretion. This Court will not reverse a trial judge's decision not to exclude documents and evidence from trial absent a finding that the trial court abused its discretion. *Farrell v Auto Club of Michigan*, 155 Mich App 378; 399 NW2d 531 (1986).

There was no abuse of discretion in the instant case because, at the time of plaintiff's motion, the substance of the policy was already before the jury through Jakubowski's testimony. Further, plaintiff was offered and refused a mistrial, thus waiving any error. *Osborn v League Life Ins Co*, 20 Mich App 19; 173 NW2d 724 (1969).

IV

Last, plaintiff argues that the trial judge abused his discretion by excluding from evidence defendant's answers to interrogatories which, plaintiff argues, would have assisted plaintiff in establishing a prima facie case of race and sex discrimination.

This issue is now moot since we have concluded that plaintiff did establish a prima facie case. Nonetheless, we address the issue because it may reassert itself upon retrial since the statistical evidence might be relevant to the issue of pretext.

The admission or exclusion of evidence is within the sound discretion of the trial court and this Court will not reverse unless that discretion is abused. *Zokas v Friend,* 134 Mich App 437; 351 NW2d 859 (1984). The use of statistics may be relevant in establishing a prima facie case of discrimination or in showing that the proffered reasons for a defendant's conduct are pretextual. *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

In the present case, the trial judge refused admission of the statistics without stating his reasons on the record. In the face of the potential relevancy of the statistics, we hold that this was error. If the issue should reassert itself upon retrial, we admonish the trial judge to support his ruling on the record.

CONCLUSION

The trial judge's ruling granting defendant's motion for a directed verdict on plaintiff's wrongful discharge claim and her race and sex discrimination claims is reversed and the case is remanded for a new trial.

Reversed and remanded. We do not retain jurisdiction.