NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0541n.06

No. 11-1801

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 25, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| STEVEN MOJICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED PARCEL SERVICE, INC., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SUTTON, McKEAGUE and RIPPLE[*], Circuit Judges.

SUTTON, Circuit Judge. Steven Mojica, a UPS truck driver, delivered a suspicious package

to a vacant house in Pontiac, Michigan—or at least that's what he recorded on his electronic delivery

log and told a UPS office manager via two text messages. When UPS discovered that Mojica never

delivered the package and had it in his truck the whole time, the company fired him. Mojica sued.

Because UPS discharged Mojica for a legitimate reason—dishonesty—we affirm the district court's

grant of summary judgment to UPS.

I.

On July 29, 2009, while making the morning rounds, Mojica went to 104 Murphy Avenue

to deliver a package. The house looked vacant and the package looked suspicious, with a towel

_____

[*]The Honorable Kenneth F. Ripple, United States Court of Appeals for the Seventh Circuit,
sitting by designation.

protruding from one side of it. Mojica suspected the package contained drugs and did not deliver it. Nonetheless, after putting the package back in his truck, Mojica made an entry on his electronic delivery log indicating he left it at the house.

About an hour later, Mojica received a text message from a UPS office manager asking if he still had the package bound for 104 Murphy Avenue, as the intended recipient had asked about it. Mojica falsely responded, "left on porch." R. 27-12. Mojica and the office manager traded a series of text messages concerning the package over the next hour:

> Office manager: "customer called back—i told him—he is outside and cannot find pkg—104 Murphy"
> Mojica: "left morning"
>
> Office manager: "are you anywhere near there—man has walked around duplex and cannot find pkg"
> Mojica: "in a little bit"
>
> Office manager: "pls call me—re 104 Murphy—he cannot find—very valuable contents"
> Mojica: "yes"
>
> Office manager: "sorry—104 Murphy is from out of town and needs to be driven somewhere—can u go soon"
> Mojica: "yes"

R. 27-13, 27-14, 27-15, 27-16.

Roughly two hours after his initial arrival at 104 Murphy Avenue, Mojica called his manager, Paul Maconochie, and acknowledged he still had the package. Maconochie told Mojica that someone from UPS's security division would get the package from him. When Bob Isenegger,

UPS's security supervisor, met Mojica later that afternoon, he noticed that the package showed signs of tampering. Mojica admitted he had opened it. The package sure enough contained plastic bags filled with what appeared to be marijuana. Isenegger delivered the package to federal authorities.

When Mojica returned to the UPS facility at the end of the day, Maconochie fired him for dishonesty. Mojica appealed his discharge through the union grievance process, to no avail.

Mojica sued UPS in Michigan state court, alleging his discharge violated the State's Whistle-Blowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq*., as well as public policy. UPS removed the case to federal court, and the district court granted UPS's motion for summary judgment on both claims. Mojica appeals the dismissal of his public-policy claim.

II.

Michigan law provides a cause of action to employees discharged in violation of public policy. *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711–12 (Mich. 1982). The district court held that this cause of action is available only to at-will employees, not to unionized employees like Mojica who enjoy the protection of a collective bargaining agreement requiring just cause for termination. Whether the cause of action extends beyond at-will employees remains an open question: the only state appellate court decision on the matter is unpublished and non-binding. *Manczak v. City of Bay City*, No. 199395, 1998 WL 1992514, at *1 (Mich. Ct. App. Mar. 27, 1998) (cause of action limited to at-will employees). We need not wade into the area, because Mojica

failed to introduce sufficient evidence to prevail on the public-policy claim even assuming it extends to unionized employees.

A company that fires an employee because he "fail[s] or refus[es] to violate the law in the course of employment" runs afoul of Michigan's public policy. *McNeil v. Charlevoix County*, 772 N.W.2d 18, 24 (Mich. 2009). Mojica claims that UPS fired him because he refused to violate state and federal law by delivering a package that may have contained narcotics. *See* Mich. Comp. Laws § 333.7401(1); 21 U.S.C. § 841(a). To prevail on this claim, Mojica must demonstrate that delivering the package would have been unlawful and that his refusal to deliver the package caused the discharge. *See McNeil*, 772 N.W.2d at 24; *Goins v. Ford Motor Co.*, 347 N.W.2d 184, 191 (Mich. Ct. App. 1983).

Even if we assume that the delivery would have been unlawful, Mojica faces a serious, indeed insurmountable, problem: a dearth of evidence that UPS fired him because he failed to deliver the package. When asked during his deposition whether "anybody at UPS [told him he was] being discharged because [he] refused to deliver the package," Mojica replied, "[n]ot that I can remember." R. 27-3 at 214. All of the record evidence shows that UPS fired Mojica because he *lied repeatedly* about delivering the package. Manager Paul Maconochie told Mojica he was being "discharged for dishonesty." R. 27-35 at 3. Mojica's termination letter gave the same reason:

> Please be advised our investigation has revealed that you were dishonest in your actions. Therefore, pursuant to Article 17(a) *dishonesty* and 17(i), *other serious offenses*, of the [collective bargaining agreement], your employment with UPS has been terminated effective immediately.

R. 27-18.

Mojica's response to the charge of dishonesty is a tangled web. He says he accidentally hit a button on the delivery log indicating he delivered the package and did not know how to correct the entry. As for the false text messages, he says he was trying to "keep the records . . . consistent" until he had a chance to speak with his manager. Mojica Br. at 7–8. Maybe, just maybe, all of this is true. But UPS could fairly believe something else—that Mojica's actions showed he had problems being forthright or, worse, that he planned to steal the contents of the package for himself. Either way, UPS could reasonably conclude that Mojica did not demonstrate the level of integrity it expects from its employees. Maintaining honesty among employees is important for any business. But it is essential for a company "whose business is the careful transport of other people's goods." *Fulghum v. United Parcel Serv., Inc.*, 378 N.W.2d 472, 479 (Mich. 1985).

Mojica points to one piece of evidence purporting to show that UPS fired him because he refused to deliver the package. When Mojica called Maconochie and finally admitted to having the package, Maconochie told him that "the first thing [he] would have done was to deliver the package and then let the center know about what [he] suspected." R. 27-35 at 2. Why? "[Y]ou don't want people [i.e. drug dealers] coming to you for a package that could be worth a lot of money." *Id*. That may or may not be sound advice, but the critical point is that it was just that: advice. Maconochie

was telling Mojica only what *he* would have done with the package. As Mojica admitted during his deposition, Maconochie did not instruct him to go back to 104 Murphy Avenue to deliver the package. He instead told Mojica to keep the package until the security division came to get it. Maconochie's statement would not permit a reasonable jury to conclude that UPS's stated reason for Mojica's termination (his dishonesty) was a pretext for a potentially illegitimate reason (his refusal to violate the law by delivering the drug-filled package). *See Dixon v. W.W. Grainger, Inc.*, 423 N.W.2d 580, 584 (Mich. Ct. App. 1987).

III.

For these reasons, we affirm.