JOHN W. JONES v. BENJAMIN J. VANBOCHOVE.

*Deed—Easement—Right of way—Abandonment.*

1. A cement company owned a marl bed, and, being desirous of building a railroad from the bed to its factory, secured a deed from the owner of the intervening land by which the grantor conveyed to the grantee a "certain piece or parcel of land * * * described as follows, to wit: The right of way for a railroad running from the marl bed of said cement company to its works, * * * and described as follows: A strip of land 40 feet wide, being 20 feet on each side of the center line as now located of the said company's railroad [describing said center line], the whole length of said strip of land being 952 feet." And it is held that the deed conveyed an easement, and not a fee.

2. After operating its factory for a time, the cement company failed, and its successors never engaged in the manufacture of cement. The factory was sold and torn down, the railroad taken up, the fences inclosing said right of way were removed, and a bridge spanning a river lying between the factory and the marl bed was torn down. And it is held that such non-user, with so clear an intent to abandon as is shown by said acts, amounted to an absolute abandonment of the easement.

Error to Kalamazoo. (Buck, J.) Argued November 1, 1894. Decided December 18, 1894.

Trespass. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*H. O. Bliss* (*W. G. Howard*, of counsel), for appellant.

*William Shakespeare* and *Boudeman & Adams*, for defendant.

LONG, J. In 1876 the Eagle Portland Cement Company was the owner of a body of land in the township of Kalamazoo, county of Kalamazoo, upon which there was a marl bed. The marl bed and land were some distance

east of the river road and of the Kalamazoo river. The company was at the same time operating a factory on the west side of the river, about three-fourths of a mile west of the marl beds, and at which factory the marl was manufactured into cement. In the above year, the company, being desirous of building a railroad from the beds to the factory, purchased of George W. Winslow the right of way over a strip of land along the line of its proposed road, 40 feet wide and 952 feet long. In the January following, Winslow deeded to the company all the land he owned on that section north of said railroad strip, and being about 2½ acres. This land (and, it is now claimed, also the railroad strip) came to the plaintiff by an unbroken chain of title, the plaintiff acquiring title April 1, 1891.

Several years before the plaintiff claimed title to the land, the cement company failed, and its property passed, on foreclosure of mortgage, into the hands of Bush & Patterson. They never carried on the business of manufacturing cement. They sold the manufacturing buildings and land, and the buildings were torn down. They took down the bridge over the Kalamazoo river, over which the railroad passed, took up the iron rails and sold them, took up some of the ties and permitted others to be taken up, allowed the fences inclosing the railroad strip to go to decay; and, as Mr. Patterson says, in doing these acts they intended to abandon the manufacture of cement and the railroad. In the meantime, George W. Winslow died, leaving his real property to his four children. The title to his real estate comes to the defendant by an unbroken chain of title. This strip of land lies north of Winslow's other lands of which he died seised, and defendant claims this strip under his deeds from the children of Winslow. It will be seen, therefore, that the strip lies between plaintiff's and defendant's lands, and each claims title to

it. ' The defendant is now in possession, and is cultivating it.   Plaintiff, claiming such acts were trespasses upon his close, brought an action of trespass in justice's court for damages.   Defendant pleaded title, and the cause was certified to the circuit for trial, where the court directed a verdict in favor of defendant.

The principal controversy arises over the construction of the deed made by George W. Winslow to the Eagle Portland Cement Company.   The granting clause reads:

" All that certain piece or parcel of land situate   *   *   *   and described as follows, to wit: The right of way for a railroad, running from the marl bed of said cement company to their works, on the west side of the Kalamazoo river, and described as follows: ' A strip of land 40 feet wide   *   *   *   and 952 feet in length."

. The deed is in the usual form of a full covenant warranty.

We think the court below was correct in holding that the deed conveyed an easement only, and not a fee.   It does not purport to convey a strip of land 40 feet wide, etc., but the right of way over a strip 40 feet wide. Cases, undoubtedly, can be found in which the operative words of the grant relate to the land itself; but such construction cannot be given to this deed.   Where the land is first conveyed, and then a provision afterwards inserted, showing what the land is to be used for, it is held in many cases that the fee is conveyed, and the clause providing for what the land is to be used is a condition subsequent; but this deed is not open to that construction. It is clear that an easement only was here intended. *Flaten v. City of Moorhead,* 51 Minn. 518; *Robinson v. Railroad Co.,* 59 Vt. 426.

It is further contended that the court erred in holding that the right of way had been abandoned.   The evidence is uncontradicted that the railroad was taken up, the rails

and ties removed, the fences taken away, and the bridge across the river torn down. The acts of abandonment seem to have been complete, and, if anything more was needed, Mr. Patterson testified that all these acts were done for the purpose and with a view to abandon the right of way. In a note to *Wyman v. Hurlburt,* 40 Am. Dec. 467, it is said:

"Whether non-user of an easement, unaccompanied by other acts inconsistent with the exercise of such rights, will be sufficient to warrant the presumption of an abandonment, is determined largely by the fact of how the easement originated,—whether by express grant or by prescription. It is said that in the former case no presumption of abandonment arises from non-user, no matter how long the same may be continued, if the owner of the servient estate does no act interfering with its use."

But Mr. Justice Holmes, in his note to Kent's Commentaries (volume 3, p. 449), says:

"There seems to be no sound distinction between easements created by deed and those acquired by prescription."

And he lays down the broad doctrine that, no matter how the easement was acquired, non-user for a less time than that required by the statute of limitations for the perfection of the easement is no presumption of an abandonment. But it seems to be settled that, when the non-user is accompanied by acts on the part of the owner of either the dominant or servient tenement which manifest an intention to abandon, and which destroy the object for which the easement was created or the means of its enjoyment, an abandonment will take place. *Davis v. Gale,* 32 Cal. 26; *Canny v. Andrews,* 123 Mass. 155; *Ward v. Ward,* 7 Exch. 838; *Reg. v. Chorley,* 12 Q. B. 515; *Hale v. Oldroyd,* 14 Mees. & W. 789; *Williams v. Nelson,* 23 Pick. 141; *Dyer v. Depui,* 5 Whart. 584; *Mowry v. Sheldon,* 2 R. I. 369; *Crain v. Fox,* 16 Barb. 184. Mere non-user may not amount to an abandonment, but non-user with so

clear an intent to abandon as here shown amounts to an absolute abandonment; so that the right to the possession and use must be held to have vested in the defendant.

Some other questions are raised, which we do not think warrant discussion under the view we take of the questions here discussed.

The judgment below must be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.