## DUMAS v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 96212. Submitted March 8, 1988, at Detroit. Decided May 17, 1988.

Richard Dumas and some 180 other commissioned sales representatives of the Auto Club Insurance Association brought in Wayne Circuit Court an action against Auto Club Insurance Association, claiming that the company's unilateral decision in 1977 to change their method of compensation from a percentage-based system to a unit-based system constituted a breach of contract, was accomplished by fraud and misrepresentation, resulted in unjust enrichment to defendant, should be barred by promissory estoppel and constituted age discrimination. Defendant moved for summary disposition. Following hearings, renewed motions for summary disposition and continuing discovery, the trial court, John H. Hauser, J., dismissed all of plaintiffs' claims except the breach of contract claims of three of the plaintiffs. Plaintiffs appealed.

The Court of Appeals *held:*

1. With respect to the group of plaintiffs who were told that they would receive as compensation a seven percent commission but to whom defendant made no representation as to the duration of that commission, it was error for the trial court to dismiss their breach of contract claim, since it is for the trier of fact to determine whether the defendant, by the adoption of employment policies, created a reasonable expectation in those employees that they would continue to be employed on the same basis.

2. With respect to the group of plaintiffs to whom the defendant allegedly promised to pay the percentage commission forever, the trial court erred in granting summary disposition in favor of defendant on the basis of the statute of frauds. An oral contract which may be completed in less than one year,

REFERENCES

Am Jur 2d, Contracts §§ 2, 3, 67.
Am Jur 2d, Estoppel and Waiver § 48.
Am Jur 2d, Master and Servant §§ 2, 14, 19.
Am Jur 2d, Restitution and Implied Contracts § 3.
Comment Note.—Promissory estoppel. 48 ALR2d 1069.

even though it is probable that the contract will extend over a period of years, is not violative of the provisions of the statute of frauds.

3. It was error for the trial court to grant summary disposition with respect to those plaintiffs who were hired prior to the time that defendant allegedly began promising to pay the percentage commission forever, since there were unresolved questions of fact as to whether these plaintiffs had reasonably relied on the announced employment policies and thereby reasonably expected that they were to be paid on that basis.

4. Since a prior NLRB decision concerning a charge that defendant's acts constituted an unfair labor practice did not involve the same ultimate issue as was litigated in this case, the present action is not barred either by res judicata or collateral estoppel by the NLRB decision.

5. Since there was no misrepresentation of a present or past fact, the trial court properly dismissed the fraudulent misrepresentation claim.

6. Since there remain unresolved questions of fact as to whether defendant was unjustly enriched, plaintiffs are entitled to have those questions resolved by the trier of fact.

7. The record fails to factually support the plaintiffs' claim of promissory estoppel or age discrimination. Accordingly, the trial court properly dismissed those claims.

8. The trial court properly dismissed the claims of the two plaintiffs who failed to comply with discovery orders and the two plaintiffs who filed separate and independent actions.

Affirmed in part, reversed in part and remanded.

1. LABOR RELATIONS — EMPLOYMENT CONTRACTS.

A contract of employment is the result of a voluntary act conveying the mutual intent of the parties to be bound by its terms and provisions; where there is no written evidence of mutual intention, the questions of whether the contract was formed, what its terms are, and whether the terms have been validly modified are questions for the trier of fact.

2. LABOR RELATIONS — PERSONNEL POLICIES — EMPLOYMENT CONTRACTS.

An employee's expectations of the continuation of the employer's personnel policy cannot be considered reasonable or legitimate where the employer has regularly changed its policy unilaterally; the question of whether there was a reasonable and legitimate expectation in the employee that the employer's policy or practice was a term of the employment contract, which bears directly on the question of whether the employer

was free to change the policy or practice unilaterally, is a question for the trier of fact.

3. FRAUDS, STATUTE OF — CONTRACTS — ORAL CONTRACTS.

The provisions of the statute of frauds are not applicable with respect to an oral contract which may be completed in less than one year, even though it is probable that the contract will extend for a period of years (MCL 566.132[a]; MSA 26.922[a]).

4. MASTER AND SERVANT — PERSONNEL POLICIES — EMPLOYMENT CONTRACTS — CONSIDERATION.

An employee may secure enforceable contractual employment rights arising out of an employer's establishing of employment policies and practices which are designed to enhance the employment relationship; the expectation by the employer of an orderly, cooperative and loyal work force is sufficient consideration to support the imposition of an enforceable contractual obligation on the employer.

5. ESTOPPEL — JUDGMENTS — COLLATERAL ESTOPPEL.

Collateral estoppel applies only where the same ultimate issues underlying the present action were involved in a previous action between the parties and the parties had a full opportunity to litigate the ultimate issues in the former action.

6. FRAUD — FUTURE PROMISES — TORTS — CONTRACTS.

Promises with respect to future compensation are contractual in nature and do not constitute fraud; a tort action for fraud and misrepresentation must be based upon the fraudulent misrepresentation of an existing or past fact.

7. CONTRACTS — CONTRACT-IN-LAW — UNJUST ENRICHMENT.

The essential elements of a claim for a "contract-in-law" to prevent unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable that the defendant retain.

8. ESTOPPEL — RELIANCE.

The elements of equitable or promissory estoppel are: 1) a promise; 2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; 3) which in fact produced reliance or forbearance of that nature; and 4) in circumstances such that the promise must be enforced if injustice is to be avoided; the reliance must be definite and substantial.

*Lopatin, Miller, Freedman, Bluestone, Erlich,*

*Rosen & Bartnick* (by *Richard E. Shaw*), for plaintiff.

*Fox & Grove, Chartered* (by *Kalvin M. Grove* and *Steven L. Gillman*), and *Finkel, Whitefield & Selik* (by *Robert J. Finkel*), for defendant.

Before: DOCTOROFF, P.J., and CYNAR and P. D. HOUK,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the October 3, 1986, order entered in Wayne Circuit Court granting defendant's motion for partial summary disposition.

Plaintiffs (some 180) are present and former commissioned sales representatives employed by defendant. Plaintiffs are challenging defendant's 1978 modification from a percentage-based commission system to a unit-based commission system. When plaintiffs were hired by defendant, they were informed that they would be paid a 7 or 7½ percent commission (depending on whether in metropolitan Detroit or not) for each automobile insurance policy sold and for each subsequent renewal of the policy by the insured. Plaintiffs were also allegedly told that their employment would only be terminated for good cause.

On December 2, 1977, defendant issued a memorandum to all sales representatives announcing that, effective July 1, 1978, the sales representatives would be paid under a new unit-based commission system. Under the unit plan, sales representatives continued to be paid a commission for all sales and renewals, but the commission would be calculated as a specified dollar amount rather than a percentage of the insurance premium. The deposition testimony of Eugene Kuthy, who au-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dited defendant, explained the reason for the change. He stated that the commissioned sales representatives' compensation percentage increases were "significantly higher" than the compensation percentage increases of others employed by defendant. The commissions were directly related to general premium rate increases, but not to productivity. A committee, comprised of mid-level executives and Kuthy, changed the compensation system to a unit-based commission system because a unit system is more related to productivity.

In 1980, defendant allegedly began enforcing minimum production quotas which, previously, were merely goals for which plaintiffs could strive.

On February 7, 1978, the Michigan AAA Sales Association (union) was certified as the exclusive representative of defendant's sales force in the tri-county Detroit metropolitan area. The union filed a complaint with the National Labor Relations Board, alleging, among other things, that defendant unilaterally changed the commission system without having first negotiated with the union. Administrative Law Judge Morton D. Friedman determined that defendant adopted the unit system prior to the "advent" of the union and its certification and, thus, defendant was not obligated to negotiate with the union regarding the unit-based commission system. The union was decertified in October, 1982.

On May 26, 1983, plaintiffs filed the instant complaint based upon the change in the commission system, alleging, among other things, breach of contract. Defendant moved for accelerated judgment or, in the alternative, summary judgment under GCR 1963, 116 and 117, now MCR 2.116. With respect to plaintiff's breach of contract claim,

the trial court, on January 10, 1984, entered an order as follows:

    1. *Count i—Breach of Contract:*
    a) Plaintiffs' Count i claim, insofar as it involves a challenge to Defendant's implementation of minimum production standards is preempted by the National Labor Relations Act, and thereby dismissed;
    b) Plaintiffs' Count i claim, insofar as it involves a challenge to Defendant's change in its commission system with respect to insurance policies sold after that change, and renewals thereof, is also dismissed; and
    c) Plaintiffs' Count i claim, insofar as it involves a challenge to Defendant's change in its commission system with respect to the renewal of insurance policies originally sold prior to that change is not dismissed, and Defendant's Motion ti [sic] denied without prejudice to its right to renew that Motion after the completion of discovery.

Plaintiffs filed a motion for rehearing which was denied in a February 29, 1984, order.

Discovery continued and the case progressed until April 30, 1986. At that time, defendant filed a motion for partial summary disposition. On this date, plaintiffs filed an eighth amended complaint. For purposes of analyzing defendant's motion, we will refer to plaintiffs' eighth amended complaint.[1] In response to defendant's motion, plaintiffs filed a motion for partial summary disposition or, alternatively, a motion to strike defendant's affirmative defenses.

A hearing was held on August 19, 1986. Ultimately, the trial court granted defendant's motion for partial summary disposition and dismissed all of plaintiffs' claims except the breach of contract

---

[1] MCR 2.118(A)(4) states in part that, unless otherwise indicated, an amended pleading supersedes the former pleading.

claims of three plaintiffs. As to plaintiffs' breach of contract claims, the trial court divided plaintiffs into three groups based on an uncontroverted affidavit filed by defendant, which summarized the depositions of almost all of the plaintiffs.

The first group (139 plaintiffs) were told upon being hired that they would receive a seven percent commission, although defendant made no representations as to the duration of that commission. Based on the lack of a duration term, the court concluded that defendant was entitled to change the compensation "at will." Thus, there was no breach of contract when defendant changed the method of compensation.

The second group (twenty plaintiffs) claimed that, when they were hired, they were informed that the seven percent commission would be paid "forever" or words to that effect. However, because most of these sales representatives could not receive any renewal commissions until after their first year of employment, the trial court found that these contracts were incapable of being performed within one year, and, hence, their breach of contract claims were barred by the statute of frauds.[2]

Finally, the third group (twenty plaintiffs) claimed that after being hired, they were advised that the receipt of a seven percent commission would be "forever." The trial court found that these contracts were unenforceable because plaintiffs provided no additional consideration for receipt of the promise of payment of a seven percent commission forever.

With respect to all of the plaintiffs' claims of fraud and misrepresentation, unjust enrichment,

---

[2] A few plaintiffs in this group were eventually excluded from the group since they were entitled to receipt of the seven percent commission for renewals before the end of one year.

and promissory estoppel, the court granted defendant's motion because elements of these claims were lacking and because res judicata barred these claims since they had been litigated before the NLRB. The plaintiffs' age discrimination claims were barred by the statute of limitations and res judicata due to the prior NLRB decision.

Finally, the claims of four plaintiffs were dismissed because two had failed to comply with discovery orders and the other two had filed separate and independent actions.

Subsequently, plaintiffs moved for reconsideration, which was denied. The instant appeal followed.

Plaintiffs raise four issues on appeal. First, they allege that the trial court erred by granting summary disposition in favor of defendant as to their breach of contract claims. For purposes of clarity, we will address this claim for each group separately. From our review of the lower court records, we determine that the trial court granted defendant's motion pursuant to MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. When passing on such a motion, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence available to it. The party opposing summary disposition has the burden of showing that a genuine issue of disputed fact exists. Giving the benefit of reasonable doubt to the nonmoving party, the court must determine whether the kind of record which might be developed will leave open an issue upon which reasonable minds might differ. The appellate court is liberal in finding a genuine issue of material fact. *Richie v Michigan Consolidated Gas Co,* 163 Mich App 358, 367; 413 NW2d 796 (1987).

### THE FIRST GROUP

As to these plaintiffs, the trial court found that defendant was entitled to change plaintiffs' compensation "at will" because defendant made no representations as to the duration of the receipt of the seven percent commission. Plaintiffs argued below that defendant's subsequent change from a commission-based system to a unit-based system breached their employment contracts.

In analyzing this group of plaintiffs' claims, two cases of this Court are instructive: *Bullock v Automobile Club of Michigan,* 146 Mich App 711; 381 NW2d 793 (1985), lv gtd 425 Mich 872 (1986), and *Farrell v Auto Club of Michigan,* 155 Mich App 378; 399 NW2d 531 (1986).[3]

In *Bullock,* the plaintiff alleged that, when he was hired in 1968, defendant made certain promises and representations to him, including: (1) a promise of a lifetime job as long as he did not steal; (2) a promise of a sales representative position earning a seven percent commission for his sales; and (3) the indication that, if he worked hard to build up his "book of business" which consists of accumulated policies and memberships that a commissioned salesperson builds up over the years, he could enjoy his later working years by realizing those commissions. *Id.,* p 715. In 1982, Bullock was demoted from a commissioned salesperson to a salaried member advisor. He alleged that his demotion, which was allegedly due to his failure to meet the production standards, and the implementation of a unit compensation program in place of the commission compensation violated

[3] This case, *Bullock* and *Farrell* all involve the same defendant and arise out of essentially the same circumstances, namely: defendant's change in the compensation system for commissioned sales representatives and imposition of minimum production requirements. The minimum production aspect of this case was stayed in the trial court.

his preexisting contract. After discussing the "narrow" holding in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980), the *Bullock* panel noted that *Toussaint* did not abrogate the traditional notions of contract law nor directly address the issue presented in that case. 146 Mich App 719. The *Bullock* panel continued:

> The contract of employment still remains the result of a voluntary act, conveying the mutual intent of the parties to be bound by its terms and provisions. See *McDonald v Boeing,* 43 Mich 394; 5 NW 439 (1880). Further, where there is no written evidence of mutual intention, whether the contract was formed, what its terms are, and whether the terms have been validly modified continue to be questions for the trier of fact. [146 Mich App 719-720.]

Under *Toussaint,* an employer can protect itself against an employee's having a reasonable expectation that a policy or practice is part of the employment contract by simply informing the employee that its policy is subject to being changed at any time. *Bullock, supra,* p 720. Notice or knowledge of unilateral changes can be construed from the circumstances surrounding employment. Whether such notice or knowledge was ever given to an employee is a question for the trier of fact. *Bullock, supra,* pp 720-721. The question whether there was a legitimate and reasonable expectation on the part of the employee that an employer's policy or practice is a term of the employment contract, which bears directly upon the question of whether the employer is free to unilaterally change the policy, is for the trier of fact. *Bullock, supra,* p 721.

Ultimately, the *Bullock* Court held:

Accordingly, we hold that whether the terms of plaintiff's employment contract included provisions (1) that he would have a lifetime job as long as he did not steal, (2) that he would be employed as a sales representative and compensated by commissions on his sales throughout his employment, and (3) that he could enjoy his later working years by realizing those commissions are questions of fact which must be decided by the trier of fact. Once the terms of plaintiff's employment contract are determined, then the ultimate issue of whether defendants breached the employment contract with plaintiff by implementing the new production standards and demoting plaintiff pursuant to those standards can be determined by the trier of fact. [146 Mich App 721.]

See also *Farrell, supra,* p 386.

In this case, the trial court erred by granting summary disposition with respect to these plaintiffs. Defendant does not contend that it directly notified plaintiffs that its policy or practice was subject to unilateral change at any time. Instead, defendant asserts that, because the compensation system underwent several changes during the 1960's and 1970's, these changes constituted notice that the compensation system was subject to unilateral change. It is true that, where an employer has unilaterally changed its personnel policies regularly, the plans cannot give rise to rights enforceable in contract because the employee's expectations are not considered reasonable or legitimate. *Engquist v Livingston Co,* 139 Mich App 280, 283-284; 361 NW2d 794 (1984). However, defendant's affidavit describing the changes in the compensation system is not clear regarding what specific changes had been made. Thus, it is a question for the trier of fact whether plaintiffs had notice or knowledge that the compensation system was subject to unilateral change.

Moreover, the question whether plaintiffs had a legitimate and reasonable expectation that the commission system was a term of their employment contracts, which bears directly on the question of whether defendant was free to unilaterally change the system, was for the trier of fact. Defendant's reliance on *Lichnovsky v Ziebart International Corp,* 414 Mich 228; 324 NW2d 732 (1982), is misplaced. *Lichnovsky* dealt with the issue whether a franchise agreement was terminable at will. *Lichnovsky* did not consider the question whether a particular term became a part of the contract when the agreement was silent with respect to that term. Thus, the trial court's grant of summary disposition is reversed.

### THE SECOND GROUP

As to this group of plaintiffs, the trial court found the existence of a question of fact regarding whether defendant breached the employment contracts because, at the time plaintiffs were hired, defendant allegedly told them that the seven percent commission would be paid "forever." Although the court found the existence of a question of fact, defendant was nonetheless granted partial summary disposition as to this group's contract claims on the basis that the statute of frauds barred their claims. The trial court reached this conclusion because most of the sales representatives could not receive any renewal commissions until after their first year of employment, thereby making these contracts incapable of performance within one year and subject to the statute of frauds.

A contract for a definite term has been generally regarded to be subject to the section of the statute of frauds concerning an "agreement that, by its

terms, is not to be performed within 1 year from the making thereof," MCL 566.132(a); MSA 26.922(a), while an agreement for an indefinite term is generally regarded as not being subject to the statute of frauds. *Adolph v Cookware Co of America,* 283 Mich 561, 568; 278 NW 687 (1938); 2 Corbin on Contracts, §§ 446-447, pp 549-556.

In this case, it is clear that plaintiffs' employment with defendant could have been performed within one year. The more troubling aspect of this case is the effect of the promise with respect to renewal commissions. According to their employment contracts, these plaintiffs were not entitled to a seven percent renewal commission until after one year of employment. It is well-settled that, where an oral contract may be completed in less than one year, even though it is probable that the contract will extend for a period of years, the statute of frauds is not violated. *Farrell, supra,* p 385; *Cowdrey v A T Transport,* 141 Mich App 617, 619-620; 367 NW2d 433 (1985). In *Farrell,* plaintiff had been told by his branch manager that, if plaintiff performed satisfactorily for three to four years, he would be set for life. Defendant argued that the contract was void under the statute of frauds. This Court rejected the statute of frauds claim, finding that the employment contract could have been terminated during plaintiff's first year of employment if he did not perform satisfactorily. *Id.,* p 385.

Similarly, in our case, we find that the statute of frauds is inapplicable. These contracts could have been performed within one year, even though the sales representatives would not have been entitled to their renewal commissions until after one year of employment. Hence, these agreements must be construed as being for indefinite terms not falling within the statute of frauds. *Farrell, supra,* p 385.

Defendant's reliance on *McLaughlin v Ford Motor Co,* 269 F2d 120 (CA 6, 1959), is misplaced as that case is distinguishable. In *McLaughlin,* the plaintiff alleged a breach of promise by defendant to give him a position in general management. Plaintiff was advised by defendant that, if he took the managership of Ford's cost department for one year, he would be entitled to a job in general management. The plaintiff accepted the offer. Three years after being hired, the plaintiff was still the manager of the cost department. The plaintiff filed suit, seeking to enforce the agreement. The Sixth Circuit affirmed the district court's entry of a directed verdict for defendant, finding that, because the oral agreement was to commence more than one year after the making of the agreement, the agreement fell squarely within the terms of the statute of frauds. 269 F2d 124. *McLaughlin* is distinguishable from this case because plaintiffs were not seeking to enforce a promise that they would receive the renewal commissions. Instead, plaintiffs sought to enforce a promise that the commissions would be paid as long as plaintiffs were employed by defendant.

### THE THIRD GROUP

The trial court found that this group's contract claims were barred because the promises that the seven percent commissions would be paid "forever" were made after plaintiffs were hired and, thus, these promises were not supported by adequate consideration.

*Toussaint, supra,* p 613, is instructive on this issue:

> While an employer need not establish personnel policies or practices, where an employer chooses to

establish such policies and practices and makes them known to its employees; the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject, nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation".

See also *Bullock, supra,* pp 718-719.

In this case, it was unnecessary for these plaintiffs to provide additional consideration in order to be entitled to seek enforcement of the promise that they would receive seven percent commissions "forever." As discussed by the *Toussaint* Court, the benefits derived by the employer, i.e., a cooperative and loyal work force, were sufficient consideration. Thus, the trial court's grant of summary disposition is reversed.

Next, plaintiffs assign error to the trial court's grant of summary disposition as to their claims of fraud and misrepresentation, unjust enrichment and estoppel. The trial court dismissed these claims on two grounds: (1) the prior NLRB decision and (2) defendant had the right to change the compensation of the first and third groups of plaintiffs "at will." We will address these grounds separately.

(1) THE PRIOR NLRB DECISION.

The trial court dismissed these other claims on the basis that the prior NLRB decision barred them since the same issues in this case were already decided by the NLRB. We disagree.

The doctrine of res judicata bars a litigant from relitigating a claim when (1) the former action was decided on the merits, (2) the matter contested in the second action was or could have been decided in the first, and (3) the two actions are between the same parties or their privies. *Lud v Howard,* 161 Mich App 603, 612; 411 NW2d 792 (1987). At the outset, we reject plaintiffs' assertion that they were not substantially identical to the union which represented them in the NLRB case. See *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 399 Mich 449, 458, n 3; 249 NW2d 121 (1976), reh den 400 Mich 953 (1977).

The doctrine of collateral estoppel was discussed by this Court in *Stolaruk Corp v Dep't of Transportation,* 114 Mich App 357, 362; 319 NW2d 581 (1982):

> In order for collateral estoppel to apply, the same ultimate issues underlying the first action must be involved in the second action. The parties must also have had a full opportunity to litigate the ultimate issues in the former action. *Fifield v Edwards,* 39 Mich 264 (1878). Finally, collateral estoppel only applies where there is mutuality of estoppel. Mutuality of estoppel is present if both litigants in the second suit are bound by the judgment rendered in the first suit. *Braxton v Litchalk* [55 Mich App 708, 720; 223 NW2d 316 (1974)]; *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 42-43; 191 NW2d 313 (1971).

A careful reading of the NLRB decision reveals

that the relevant issues in that case were whether defendant instituted the unit-based compensation plan without prior consultation with the newly formed union and whether defendant was obligated to furnish the union with information. After reviewing the parties' respective positions, the NLRB administrative law judge found no unfair labor practice by defendant in its failure to consult with the union since the unit plan had already been adopted before the union was formed. Earlier in his opinion, the administrative law judge did note that the new plan was adopted as an "economy measure." This statement would indicate that plaintiffs' claims of fraud and misrepresentation, unjust enrichment and estoppel are meritless. However, for purposes of the collateral estoppel doctrine, the issue of the unit-based compensation plan was required to be the "same ultimate issue" as in this case and actually litigated. We conclude that it was not the ultimate issue in the NLRB decision nor actually litigated. Thus, plaintiffs' claims are not barred by res judicata or collateral estoppel.

### DEFENDANT'S RIGHT TO CHANGE THE COMPENSATION OF THE FIRST AND THIRD GROUPS "AT WILL."

The second basis for granting summary disposition on plaintiffs' claims was that

> if the employer had the right in its prerogative to change compensation as to the hundred and fifty-nine, I don't see how it could be fraud or misrepresentation for them to do that or unjust enrichment or that promissory estoppel would apply because they had made no promises that prohibited them from or limited their discretion to do so.

In other words, the trial court ruled that, since

plaintiffs' contractual claims were barred, all their other theories of recovery were similarly barred. As we already discussed, a question of fact exists as to the terms of plaintiffs' contracts. Thus, it becomes necessary to examine plaintiffs' alternative theories of liability.

*Fraud & Misrepresentation:* [4]

In their eighth amended complaint, plaintiffs alleged that they were induced by defendant to give up their "books," change office locations and receive new and equal "books" under the representation that plaintiffs would earn the same commission. Plaintiffs further alleged that, after trading in their "books," they learned that the seven percent commission rate had been unilaterally terminated by defendant. Plaintiffs alleged that defendant's representations were false and were intended to induce reliance by plaintiffs.

The elements constituting actionable fraud or misrepresentation were set forth in *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919):

> The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

---

[4] This count of the complaint pertains solely to the second and third groups of plaintiffs. It is undisputed that no representations were made to the first group.

The burden of proof rests with plaintiffs. Fraud will not be presumed but must be proven by clear, satisfactory and convincing evidence. *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976).

An initial consideration is whether defendant made material representations to plaintiffs. The fraudulent misrepresentations must be based upon a statement relating to a past or existing fact. Future promises are contractual and do not constitute fraud. *Hi-Way Motor Co, supra,* p 336.

In this case, the trial court properly dismissed this count of plaintiffs' complaint. The uncontroverted deposition testimony of Kuthy indicated that, in late 1977, the compensation system was changed so that it would be related to the employees' productivity. Plaintiffs did not dispute that defendant changed the compensation system for anything other than business reasons. Additionally, any representations that defendant may have allegedly made were future promises and, thus, were contractual in nature and did not constitute fraud. Moreover, according to Kuthy's deposition testimony, the decision to change the compensation system was made in 1977, after any representations had been made to plaintiffs. Thus, plaintiffs' complaint failed to state a cause of action with respect to fraud and misrepresentation.

*Unjust Enrichment:* [5]

In their complaint, plaintiffs alleged, inter alia, that defendant "confiscated" their books when plaintiffs were discharged or demoted and, thereby, was unjustly enriched. We believe that a factual question exists regarding whether defendant was unjustly enriched.

A person who has been unjustly enriched at the

---

[5] This claim applies to all plaintiffs.

expense of another is required to make restitution to the other. Restatement Restitution, § 1, p 12. The process of imposing a "contract-in-law" or a quasi-contract to prevent unjust enrichment is an activity which should be approached with some caution. The essential elements of such a claim are: (1) receipt of a benefit by the defendant from the plaintiff and, (2) which benefit it is inequitable that the defendant retain. *B & M Die Co v Ford Motor Co,* 167 Mich App 176; 421 NW2d 620 (1988).

In this case, if in fact defendant coerced plaintiffs into surrendering their books without compensation and if plaintiffs were entitled to retain their books, then a question of fact exists as to whether defendant was unjustly enriched. No affidavits or depositions were submitted on this issue. Thus, plaintiffs are entitled to present evidence in support of this claim.

### *Promissory Estoppel:* [6]

As to this count, plaintiffs alleged that they accepted and continued employment based on defendant's promises that the seven percent commission rate would continue forever. They do not allege that they terminated or refused other employment to work for defendant. The elements of equitable or promissory estoppel are: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. *Nygard v Nygard,* 156 Mich App 94, 100;

---

[6] This theory of liability solely covers the second and third groups of plaintiffs, since allegedly they were promised the receipt of the seven percent commission rate "forever."

401 NW2d 323 (1986); *Schipani v Ford Motor Co,* 102 Mich App 606, 612-613; 302 NW2d 307 (1981). Additional reliance, other than simply accepting and continuing employment, is necessary for an estoppel claim. *Schipani, supra,* p 613. Based on the foregoing, plaintiffs' reliance was not substantial. They did not allege that they forbore other employment on the alleged promises of defendant that they would receive the seven percent commission rate forever. Thus, summary disposition was proper as to this claim.

Next, plaintiffs allege error when the trial court granted summary disposition as to their age discrimination claims on the basis that the prior ruling of the NLRB and the statute of limitations barred these claims. We agree with the trial court's decision on a different basis. This Court will affirm a trial court's decision even if premised on wrong reasons. See *Lesczynski v Johnson,* 155 Mich App 392, 396; 399 NW2d 70 (1986), lv den 428 Mich 859 (1987).

To establish a prima facie case of age discrimination, a plaintiff must present evidence that (1) he had skills, experience, background or qualifications comparable to other employees who were not laid off, and (2) that age was the determining factor in defendant's decision to lay off plaintiff. *Matras v Amoco Oil Co,* 424 Mich 675, 683-684; 385 NW2d 586 (1986).

In this case, Kuthy's uncontroverted deposition showed that the change in the compensation system was a business decision made for the purpose of bringing compensation in line with productivity. Plaintiffs offered no opposing affidavits or other documents showing that age was a determining factor in defendant's decision to change the compensation system.

Finally, the trial court properly dismissed the

claims of four plaintiffs: two for their failure to comply with discovery, i.e., failing to appear for their depositions, MCR 2.313(B)(2) and (D)(1)(a) (if a party fails to appear for a deposition, the court may dismiss the action); and the other two filed separate and independent actions. See MCR 2.116(C)(6) (summary disposition is proper if another action is initiated between the same parties involving the same claim).

Affirmed in part, reversed in part and remanded for proceedings not inconsistent with this opinion.