WESTMAN v KIELL

Docket No. 113331. Submitted November 14, 1989, at Grand Rapids. Decided February 23, 1990. Leave to appeal applied for.

By condemnation order entered in the Berrien County Probate Court on May 22, 1882, the Elkhart, Niles and Lake Michigan Railroad Company acquired, for a sum of $585, a "right of way upon and across lands of Henry Salee . . . for the uses and purposes of said Railroad Company." The right of way, encompassing a sixty-six-foot-wide strip of land, was used for railroad purposes from 1882 until it was abandoned and the tracks were removed in the 1960s. On March 20, 1984, Ronald F. and Pauline M. Westman acquired fee title to a parcel of land bounded on the west by the abandoned right of way. In December, 1986, the Consolidated Rail Corporation deeded by quit-claim deed 18.507 acres of the abandoned right of way to Harold R. and Betty Ann Kiell for the sum of $10,000. The property sold to the Kiells included that portion of the right of way which abutted the Westmans' property. The Westmans filed suit against the Kiells in Berrien Circuit Court claiming fee ownership to the center of the abandoned right of way where it abutted their property. Plaintiffs moved for summary disposition. The court, John T. Hammond, J., found that the 1882 condemnation order had conveyed an easement to the railroad which was extinguished when the right of way was abandoned for railroad purposes and that, as by accretion, plaintiffs owned the underlying fee to the center of the right of way. Defendants appealed.

The Court of Appeals held:

1. The trial court correctly found that the right of way constituted an easement. The language of the 1882 condemnation order evidences an intent to convey a use or right of way upon and across the land, not to convey the land itself. Summary disposition was properly granted on this issue.

2. The trial court might have erred in awarding plaintiffs a

REFERENCES
Am Jur 2d, Easements and Licenses §§ 103-105, 108; Railroads § 85.
See the Index to Annotations under Abandonment of Property or Right; Easements; Railroads.

fee interest to the center of the right of way. Generally, when a railroad company obtains an easement for a right of way and later abandons that easement, the servient estate reverts to the owner of the dominant estate from which it was carved at the time when the use was abandoned and passes with the conveyance of the dominant estate. It cannot be determined from the record whether plaintiffs' property was part of the dominant estate from which the right of way was originally carved. The matter is remanded to the circuit court for a hearing, at which plaintiffs will be given the opportunity to demonstrate that their property was, indeed, part of the dominant estate at the time the right of way was carved from it. If the court concludes that the right of way was carved from plaintiffs' interest in the dominant estate solely, then plaintiffs are entitled to a fee interest in all of the right of way that abuts their property. If the court determines that the right of way was carved from both plaintiffs' interest in the dominant estate and the interest of those parties yet unidentified who own the property to the west of the right of way, then equity dictates that plaintiffs are entitled to a fee interest in that portion of the right of way that runs from their boundary to the center of the easement. Finally, if the court concludes that plaintiffs' property was not part of the dominant estate from which the right of way was carved, then plaintiffs are not entitled to a fee interest in any of the land contained in the right of way.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. RAILROADS — RIGHTS OF WAY — PROPERTY INTERESTS.

A railroad may acquire in a strip of real property for use as a right of way a fee simple absolute, a determinable fee, an easement, a lease, or a license; the character of the interest acquired is determined by the language of the conveyance, e.g., where the strip of land itself is conveyed for railroad purposes only, without specific designation as a right of way, the conveyance is in fee, but where the grant is not of the land but of the use or of a right of way, the land is conveyed as an easement; in some cases, an easement is deemed to have been conveyed where the grant is of the land for a right of way.

2. RAILROADS — RIGHTS OF WAY — EASEMENTS — ABANDONMENT.

Generally, when a railroad company obtains an easement for a right of way and later abandons that easement, the servient estate reverts to the owner of the dominant estate from which it was carved at the time when the use was abandoned and passes with the conveyance of the dominant estate.

*Varnum, Riddering, Schmidt & Howlett* (by *Thomas A. Hoffman* and *Richard J. McKenna*), for plaintiffs.

*Low & Low, P.C.* (by *Joseph N. Low*), for defendants.

Before: CYNAR, P.J., and MARILYN KELLY and T. G. KAVANAGH,* JJ.

PER CURIAM. Defendants appeal as of right from an order entered in the Berrien Circuit Court granting summary disposition in favor of plaintiffs in their action to quiet title. We affirm in part, reverse in part, and remand for further proceedings.

The instant action to quiet title concerns a sixty-six-foot-wide strip of land that abuts the western boundary of a parcel of real property owned by plaintiffs and commonly referred to as "the Big Four right of way." By condemnation order entered in the Berrien County Probate Court on May 22, 1882, the Elkhart, Niles and Lake Michigan Railroad Company acquired, for a sum of $585, a "right of way upon and across lands of Henry Salee . . . for the uses and purposes of said Railroad Company . . . ." This right of way, the sixty-six-foot-wide strip of land in question, was used for railroad purposes from 1882 until it was abandoned and the tracks were removed in the 1960s.

On March 20, 1984, plaintiffs acquired fee title to a parcel of land bounded on the west by the abandoned Big Four right of way. Thereafter, in December, 1986, the Consolidated Rail Corporation deeded by quitclaim deed 18.507 acres of the abandoned right of way to defendants for the sum of

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

$10,000. Included in the 18.507 acres was that portion of the right of way that abutted plaintiffs' property.

On March 28, 1988, plaintiffs brought the instant action to quiet title, claiming fee ownership to the center of the abandoned right of way where it abutted their property. Plaintiffs moved for summary disposition pursuant to MCR 2.116, no subsection specified, on July 15, 1988. Thereafter, at a hearing on plaintiffs' motion held on August 8, 1988, the circuit court found that the 1882 condemnation order had conveyed an easement to the railroad, which was extinguished when the right of way was abandoned for railroad purposes. The court also found that, as by accretion, plaintiffs owned the underlying fee to the center of the right of way. Defendants' motions for new trial and rehearing were denied on November 1, 1988.

On appeal, defendants argue that the circuit court erroneously granted summary disposition based on a mistaken conclusion that the 1882 condemnation order created an easement. Defendants further argue that the condemnation order evidences that the Elkhart, Niles and Lake Michigan Railroad Company acquired fee interest in the subject property.

Plaintiffs moved for summary disposition pursuant to MCR 2.116 without specifying on which provision of the court rule they placed their reliance. Although the circuit court's order and the hearing transcript are silent as to which provision was used in granting plaintiffs' motion, the circuit court based its decision on documentary evidence submitted to the court. Accordingly, we will treat the circuit court's ruling as though it were made pursuant to MCR 2.116(C)(10). *Grochowalski v DAIIE,* 171 Mich App 771, 773; 430 NW2d 822 (1988), lv den 432 Mich 931 (1989).

A motion for summary disposition pursuant to MCR 2.116(C)(10) is appropriately granted where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." The motion tests whether there is factual support for the claim. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988). The nonmovant bears the burden of showing that a genuine issue of disputed fact exists, *id.,* and that the disputed factual issues are material to dispositive legal claims, *Belmont v Forest Hills Public Schools,* 114 Mich App 692, 696; 319 NW2d 386 (1982), lv den 422 Mich 891 (1985). Giving the benefit of reasonable doubt to the nonmovant, the court must determine whether a record might be developed which will leave open an issue upon which reasonable minds could differ. *Dumas, supra.* All inferences are to be drawn in favor of the nonmovant. *Dagen v Hastings Mutual Ins Co,* 166 Mich App 225, 229; 420 NW2d 111 (1987), lv den 430 Mich 887 (1988). Before judgment may be granted, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. *Peterfish v Frantz,* 168 Mich App 43, 48-49; 424 NW2d 25 (1988).

A railroad may acquire in a strip of real property for use as a right of way, as in any real property, a fee simple absolute, a determinable fee, an easement, a lease, or a license, as may any other corporate entity or individual. The character of the interest acquired is determined by the language of the conveyance. *Quinn v Pere Marquette R Co,* 256 Mich 143, 150; 239 NW 376 (1931).

Where the strip of land itself is conveyed for railroad purposes only, without specific designation as a right of way, the conveyance is in fee. *Id.* at

150-151. However, where the grant is not of the land but of the use or of a right of way, then the land is conveyed as an easement. Additionally, in some cases, an easement is deemed to have been conveyed where the grant is of the land for a right of way. *Id.* at 150. See also *Boyne City v Crain,* 179 Mich App 738, 743; 179 NW2d 348 (1989); 2 Thompson, Commentaries on the Modern Law of Real Property (1980), § 381, pp 504-506.

By entry of the May 22, 1882, order of condemnation, Elkhart, Niles and Lake Michigan Railroad Company acquired a "right of way *upon* and *across* lands of Henry Salee . . . for the uses and purposes of said Railroad Company . . . [consistent with the company's operation of its] Rail Road [sic] Route upon and across said land . . . ." This language evidences an intent to convey a use or right of way upon and across the land, or, in other words, an easement. The condemnation order is devoid of any language which evidences an intent to convey the land itself. Accordingly, we conclude that the circuit court correctly found that the right of way constituted an easement and that the court correctly granted summary disposition on this issue.

However, we believe that the circuit court was a trifle hasty in awarding plaintiffs a fee interest to the center of the right of way.

Generally, when a railroad company obtains an easement for a right of way and later abandons that easement, the servient estate reverts to the owner of the dominant estate from which it was carved at the time when the use was abandoned and passes with the conveyance of the dominant estate. See 4 Thompson, Commentaries on the Modern Law of Real Property (1979), § 1849, p 371; Anno: *Who [is] entitled to [the] land upon its abandonment for railroad purposes, where rail-*

*road's original interest or title was less than fee simple absolute,* 136 ALR 296, § II, p 297. The scant Michigan law that exists on this issue appears to follow this general rule. See MCL 469.221; MSA 22.591; *Flint & P M R Co v Rich,* 91 Mich 293, 294-295, 297; 51 NW 1001 (1892).

In *Quinn,* 256 Mich 149, our Supreme Court, in obiter dictum, stated that, upon abandonment, land taken by a railroad pursuant to a voluntary grant or donation reverts to the grantor or donor or his heirs, representatives or assigns.

In *Jones v Van Bochove,* 103 Mich 98, 98-99; 61 NW 342 (1894), the Eagle Portland Cement Company obtained an easement for the purpose of operating a railroad line over a 40-foot by 952-foot strip of land belonging to one George W. Winslow. This railroad line enabled the cement company to transport marl from the marl beds it owned over the three-quarters of a mile distance lying between the beds and the cement factory. The railroad line ran between the cement company's property and Winslow's property. *Id.*

Eventually, the cement company failed. Its property passed upon foreclosure to an entity identified as Bush & Patterson. *Id.* at 99. Bush & Patterson "sold the manufacturing buildings and land, . . . took up the iron rails and sold them, took up some of the ties and permitted others to be taken up, allowed the fences inclosing the railroad strip to go to decay . . . ," *id.,* and abandoned the right of way. *Id.* at 99, 102.

In the meantime, Winslow died, leaving the dominant estate from which the easement was carved to his four children. They, in turn, conveyed the dominant estate to the defendant. *Id.* at 99. Thereafter, the defendant took possession of the abandoned right of way and began cultivating it. *Id.* at 100. The plaintiff, who had acquired title

to the failed cement company's land, filed a trespass action against the defendant for his encroachment on the right of way. The circuit court directed a verdict in favor of the defendant. *Id.* at 100. On appeal, our Supreme Court affirmed, concluding that, upon abandonment, "the right to the possession and use" of the servient estate vested with the owner of the dominant estate—that being the defendant. *Id.* at 102.

On the basis of *Jones,* we conclude that a servient estate in a strip of land set aside for use as a railroad right of way reverts to the dominant estate from which it was carved upon abandonment of the right of way and passes with the conveyance of the dominant estate.

In the instant case, we are unable to ascertain from the record whether plaintiffs' property was part of the dominant estate from which the right of way was originally carved. Accordingly, we remand the instant case to the circuit court for a hearing, at which plaintiffs will be given the opportunity to demonstrate that their property was, indeed, part of the dominant estate at the time the right of way was carved from it. If the court concludes that the right of way was carved from plaintiffs' interest in the dominant estate solely, then plaintiffs are entitled to a fee interest in all of the right of way that abuts their property. If the court determines that the right of way was carved from both plaintiffs' interest in the dominant estate and the interest of those parties yet unidentified who own the property to the west of the right of way, then we believe equity dictates that plaintiffs are entitled to a fee interest in that portion of the right of way that runs from their boundary to the center of the easement. Finally, if the court concludes that plaintiffs' property was not part of the dominant estate from which the

right of way was carved, then plaintiffs are not entitled to a fee interest in any of the land contained in the right of way.

Affirmed in part. Reversed in part. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.