931 F.2d 893
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karen FUSSELL, Plaintiff-Appellant,
v.
HEALTH CARE & RETIREMENT CORPORATION OF AMERICA, INC., d/b/a
Dearborn Heights Health Care Center, Defendant-Appellee.
 No. 90-1774.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1991.
 
 Before BOYCE F. MARTIN JR. and RALPH B. GUY, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Karen Fussell, appeals the district court's award of summary judgment for defendant, Health Care and Retirement Corporation of America (Health Care or HCR), in this Toussaint wrongful discharge action. We affirm the district court for the reasons set forth below.
 
 I.
 
 2
 In September 1985, Fussell began working at the Dearborn Heights Convalescent Center as a nurse's aide. One month prior to commencing her employment, she completed and signed an application for employment, which provides in relevant part:
 
 
 3
 I understand and agree that, if hired, my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any prior notice.
 
 
 4
 (App. 120).
 
 
 5
 Defendant purchased the Dearborn Heights facility in 1986 and began operating it under the name Dearborn Heights Health Care Center. Approximately two months later, plaintiff was promoted to the position of Social Services Director and remained in that position until termination from her job in November 1988.
 
 
 6
 Within a few months of acquiring the facility, Health Care distributed to employees an employee handbook (original handbook), which states on the first page: "This handbook should not be considered an employment contract." (App. 27). In one section of the handbook, rules of conduct are set forth in two separate lists, the first of which is prefaced: "Violating the rules listed below will result in suspension or discharge from your position," and the second of which is prefaced: "The penalty for violating the rules listed below will be disciplinary action up to and including termination." (App. 32).
 
 
 7
 The original handbook contained as its last page a perforated sheet entitled "ACKNOWLEDGEMENT OF RECEIPT" that instructed employees to sign the page and return it to their supervisors. The acknowledgement on the tear-out page reads as follows:
 
 
 8
 I have received a copy of the Employee Handbook and have read it carefully. I understand all of its rules, policies, terms and conditions, and agree to abide by them. I understand and agree that any provision of this Handbook may be amended or revised at any time by the Company. I also understand and agree that my employment is terminable at will so that both the Company and I remain free to choose to end our work relationship, and further that nothing in this Handbook in any way creates an express or implied contract of employment between the Company and me.
 
 
 9
 (App. 34).
 
 
 10
 Health Care printed a revised employee handbook (revised handbook) sometime in 1986, which Fussell testified she never received or read. However, Fussell admitted in her deposition that she received the original handbook and was familiar with its contents. When presented with a tear-out page from the revised handbook and asked if her copy of the original handbook contained the language of that page, she responded, "I don't know.... I don't ever remember this page...." When asked if seeing a copy of the tear-out page from the original handbook would refresh her memory, she responded, "I don't remember. I received the handbook, but I never cut anything out of it." When asked if she would have read the entire handbook when she received it, Fussell responded, "I glanced it over." (App. 115-16). In response to Health Care's motion for summary judgment, Fussell filed an affidavit in which she was less equivocal about the existence of the tear-out page: "The handbook I received was missing that last page, because it had been previously used. I have never seen the contents of that last page." (App. 54). Although defendant maintains that all employees received a copy of the handbook and were requested to sign and return the tear-out page, Health Care is unable to produce an acknowledgment of receipt signed by Fussell.
 
 
 11
 Plaintiff also received a document entitled "HCR Rules of Conduct" (rules), which the revised handbook incorporates by reference.[1] The rules are grouped according to their relative importance in the event they are violated ("minor," "serious," and "major") and indicate the discipline that will result from their violation. Depending on the category of rules and the number of violations, discipline could be a warning or a discharge. A prefatory note entitled "RULES FOR YOUR PROTECTION" states as follows:
 
 
 12
 Unfortunately, there may be a few people who refuse to follow orderly procedures, thereby disrupting everyone else's job and the delivery of patient care. When this happens, some form of corrective action or discipline is necessary. Corrective action can range from a verbal warning to discharge, depending on the seriousness and/or frequency of the infraction.
 
 
 13
 (App. 50).
 
 
 14
 Fussell points to three instances in which she claims to have received oral assurances of job security. According to Fussell's affidavit, Cathy Morrelli, a former facility administrator, distributed copies of the rules at a department head meeting where it was stated that employees would not be terminated except in accordance with the rules and that these rules required a three-step series of discipline before termination. Fussell also claimed in her affidavit that a corporate representative named Jim Millspaugh later told employees that they could only be fired if they were guilty of major offenses designated in the rules. Finally, plaintiff claims that another former facility administrator, Marcia Jasczc, told her that HCR's handbook and rules did not permit termination without good cause as defined by those rules. Marcia Jasczc testified in deposition that, while there was a disciplinary procedure leading her to presume that people would not be terminated without cause, there was no direct express statement that employees would be fired only for cause.
 
 
 15
 Robert Possanza, Jr., became the facility's administrator in October 1988, and one month later, Possanza discharged Fussell. Health Care contends that Fussell was discharged due to her inability to complete the assignments and responsibilities of her position. Plaintiff contests this assertion, suggesting that Possanza fired her because of his discomfort with and personal dislike of plaintiff. Fussell further contends that, because she had never been disciplined, warned, or accused of violating a rule, she was discharged without just cause. Fussell filed suit in Wayne County Circuit Court alleging that the discharge amounted to a breach of contract by Health Care, and defendant subsequently removed the action to federal district court on the basis of diversity of citizenship.
 
 
 16
 Following discovery, Health Care moved for summary judgment, and the district court granted defendant's motion on the basis that, because there was no contract to discharge for just cause only, Fussell was an at-will employee subject to discharge without cause. Plaintiff argues on appeal that there is a genuine issue of fact as to whether defendant's oral representations and written policy statements provoked a legitimate expectation on her part that her employment was terminable only for good cause.
 
 II.
 
 17
 We review a district court's grant of summary judgment de novo. Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Summary judgment is appropriate where no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court determines whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Of course, "inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).
 
 
 18
 The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record demonstrating the absence of a material issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Potters Medical Center v. City Hosp. Ass'n, 800 F.2d 568, 572 (6th Cir.1986). The non-moving party must then go beyond the pleadings and come forward with specific facts showing that there is a genuine issue of material fact. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his or her claim, summary judgment is appropriate. Fed.R.Civ.P. 56(e).
 
 
 19
 Fussell's wrongful discharge claim is governed by the Michigan Supreme Court's ruling in Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 292 N.W.2d 880 (1980), and its progeny. Although Michigan law provides that relations between employers and their employees are generally "terminable at the will of either party," Lynas v. Maxwell Farms, 279 Mich. 684, 687, 273 N.W. 315, 316 (1937), the court in Toussaint stated "that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." Toussaint, 408 Mich. at 610, 292 N.W.2d at 890. Such a provision may become part of the contract "either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." 408 Mich. at 598, 292 N.W.2d at 885.
 
 
 20
 It is important at the outset to emphasize that there is no explicit agreement in the record to terminate only for just cause. Rather, plaintiff relies upon oral assurances and expectations grounded in policy statements as implying a "just cause" limitation on discharges. See Bullock v. Automobile Club of Michigan, 432 Mich. 472, 482-83, 444 N.W.2d 114, 119 (1989) (confirming the reasoning of Toussaint that employer's oral promises give rise to enforceable contract rights), cert. denied, --- U.S. ----, 110 S.Ct. 1118 (1990); In re Certified Question (Bankey v. Storer Broadcasting Co.), 432 Mich. 438, 454, 443 N.W.2d 112, 119 (1989) (policy manual terms may give rise to a situation "instinct with obligation").
 
 
 21
 However, Toussaint held that employers can avoid misunderstanding over the term of employment by establishing "a company policy of requiring prospective employees to acknowledge that they served at the will or the pleasure of the company...." Toussaint, 408 Mich. at 612, 292 N.W.2d at 891. Thus, Toussaint did not "recognize employment as a fundamental right or create a new 'special' right. The only right held in Toussaint to be enforceable was the right that arose out of the promise not to terminate except for cause." Valentine v. General Am. Credit, Inc., 420 Mich. 256, 258, 362 N.W.2d 628, 629 (1984). Employers and employees remain free to not provide for job security, and absent a contractual provision for job security, either the employer or employee may terminate an employment contract at any time for any or no reason. 420 Mich. at 258-59, 362 N.W.2d at 629.
 
 
 22
 Where the employer has not agreed to job security, it can protect itself by entering into a written contract which explicitly provides that the employee serves at the pleasure or at the will of the employer or as long as his services are satisfactory to the employer.
 
 
 23
 Toussaint, 408 Mich. at 612 n. 24, 292 N.W.2d at 891 n. 24.
 
 
 24
 Consequently, when the employer has expressly stated to the employee that employment is terminable at will, he has done all that is required to create contracts for employment at will, and we will deny Toussaint claims relying upon oral assurances and policy statements made subsequent to these expressions. Duncan v. Rolm Mil-Spec Computers, 917 F.2d 261, 263-64 (6th Cir.1990); Pratt v. Brown Mach. Co., 855 F.2d 1225, 1234-35 (6th Cir.1988). The language in the employment application ("my employment ... may ... be terminated at any time without any prior notice") and the tear-out page ("my employment is terminable at will") explicitly provide that employment at the Dearborn facility is terminable at will. Therefore, in order to withstand defendant's motion for summary judgment, plaintiff in this case must establish that a genuine issue of material fact exists as to whether the employment application and the tear-out page govern her employment status at Health Care, and in the absence of their applicability, that disputed issues of fact exist as to whether defendant's oral representations or policy statements imply an agreement to terminate only for cause.
 
 III.
 
 25
 Fussell contends that Health Care is not entitled to rely on the employment application as an expression of its policy because the application was made to another employer when the facility was under different ownership. Although plaintiff contends that the predecessor employer's application for employment does not apply to her employment relationship with the defendant, she does not argue or offer any evidence that the defendant, at the time of the change in ownership, made any representations, express or implied, that her employment status would change. Further, plaintiff makes no claim that, when she was promoted to director of social services within two months after the buy-out, defendant made any statements that could give rise to the legitimate expectation that she could be discharged only for cause.[2] The first representations issued by the defendant upon which plaintiff relies came with the issuance of the first handbook that contained the tear-out page unequivocally stating an at-will employment policy. Even assuming the inapplicability of the employment application, we find that the tear-out page operates to establish Fussell's employment as terminable at will, and the subsequent oral assurances and policy statements that Fussell relies upon must be assessed in light of this policy statement. See Dell v. Montgomery Ward & Co., 811 F.2d 970, 974 (6th Cir.1987) ("sign off" sheet stating employee could be discharged "with or without cause" is binding upon the parties). However, before addressing the implied promises alleged by Fussell, we first address her claim that because she never received the tear-out page it is not effective as an at-will agreement.
 
 
 26
 We faced analogous circumstances in Pratt where the defendant was unable to produce a handbook tear-out page signed by the plaintiff stating that employment was at the will of the company. The plaintiff in that wrongful discharge case admitted to receiving the handbook but did not recall whether he received or signed the final tear-out page. 855 F.2d at 1233. When he was asked whether his copy of the handbook might have had the last page, he responded, "I don't remember" and "[i]t may have." Id. at 1228. In the face of the employer's testimony that it distributed handbooks containing the tear-out page to all employees, we held that the plaintiff "may not create a dispute of fact concerning an issue about which he has no recollection." Id. at 1233.
 
 
 27
 Similarly, Fussell acknowledged in her deposition that she received the handbook and glanced over it but did not remember whether it contained the tear-out page. The situation presented here would be identical to the one in Pratt had Fussell not responded to defendant's motion for summary judgment by filing an affidavit indicating an improved recollection: "The handbook I received was missing that last page, because it had been previously used. I have never seen the contents of that last page." However, where the record does not present a genuine issue of material fact, once a summary judgment motion has been made, a party may not create a factual issue by filing an affidavit which contradicts earlier deposition testimony. Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986) (citing Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir.1984). In both Reid, 790 F.2d at 460, and Biechele, 747 F.2d at 251, we stated:
 
 
 28
 If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.
 
 
 29
 Plaintiff's affidavit contradicts her deposition testimony, which testimony was insufficient to create a dispute of fact on the issue of whether she received the tear-out page, and thus the affidavit is insufficient to show a genuine issue of material fact. Further, the fact that plaintiff may not have signed and returned the tear-out page is not dispositive as to whether the employer reserved the right to fire employees without just cause. See Pratt, 855 F.2d at 1233. Rather, where it remains undisputed that the employer considered the policy reflected in the tear-out page to be controlling, and copies of the handbook containing the tear-out page were distributed to employees, Health Care "took the action expressly approved in Toussaint and entered into contracts with its employees making the employment of each individual terminable at will." Pratt, 855 F.2d at 1233 (quoting Ledl v. Quik Pik Food Stores, Inc., 133 Mich.App. 583, 588, 349 N.W.2d 529, 531 (1984).
 
 IV.
 
 30
 Plaintiff argues that, even assuming that defendant's disclaimers were effective at one time, the subsequent actions of defendant--the promulgation and distribution of the rules prescribing procedures for discipline and the oral assurances of supervisors--could reasonably be considered a modification of the disclaimers so as to promote legitimate expectations of job security. We reject plaintiff's contention that oral representations and rules of conduct, made inconsistent with and subsequent to a written at-will employment policy, necessarily create a jury question as to whether the at-will agreement was modified so as to create an implied just cause employment contract. "Though Toussaint holds that there may be an implied contract that employment may be terminated only for good cause, it does not hold that this may be the case where an express contract makes the term of employment at will." Reid, 790 F.2d at 462.
 
 
 31
 Plaintiff relies on the oral assurances of supervisors, alleging that she was told that she could only be fired if she was guilty of major offenses designated in the rules, that the rules did not permit termination without good cause, and that the rules required a three-step disciplinary procedure before she could be terminated.[3] These oral assurances fail to create a legitimate expectation of a just cause contract. In Pratt, where the plaintiff relied on assurances that he would become a "permanent" employee, had a "very good" probability of continued employment, and would not be fired without just cause, we held that explicit at-will language in the employee handbook served "to negate the legitimacy of any expectation [the employee] may have had based on [his manager's] representations." 855 F.2d at 1234-35. Oral assurances of job security inconsistent with the express at-will language of a written policy establish "at most a subjective expectation of dismissal only for cause." Vollrath v. Georgia-Pacific Corp., 899 F.2d 533, 535 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 345 (1990); see also Duncan, 917 F.2d at 264. Although Health Care's representations may have given Fussell the subjective expectation that she would be discharged only for just cause, a "subjective expectation does not create an enforceable contract right." Sepanske v. Bendix Corp., 147 Mich.App. 819, 827, 384 N.W.2d 54, 58 (1985), appeal denied, 433 Mich. 914 (1989).
 
 
 32
 Plaintiff also relies on various passages in the handbooks and rules of conduct, which she alleges imply the right to expect not to be disciplined or discharged unless a rule is violated. Plaintiff points to the statement in the revised handbook that supervisors may terminate "employees who violate policies," as well as the following language in the rules: "Unfortunately, there may be a few people who refuse to follow orderly procedures.... When this happens, some form of corrective action or discipline is necessary." (Emphasis added). The original handbook also states in two places that suspension or discharge will result for "violating the rules." According to the plaintiff, when these policies express that discipline results from a violation of the rules, the converse is inferable and gives rise to the expectation that employees who do not break the rules will not be discharged.
 
 
 33
 We find no merit to plaintiff's claim that these references to the rules, as well as the existence of the rules themselves, create the legitimate expectation that Health Care had a contract of employment calling for discharge only for just cause. The first page of the original handbook explicitly declares that "this handbook should not be considered an employment contract."[4] Further, we have consistently held that an employee handbook listing specific activities that may result in termination does not vitiate an express at-will employment contract and does not provide plaintiffs with a reasonable basis to conclude that employees will be terminated only for cause. Reid, 790 F.2d at 460; Dell, 811 F.2d at 974; Pratt, 855 F.2d at 1234-35. "The fact that certain acts were identified as conduct that might lead to discharge did not indicate that these acts were the exclusive permissible grounds for discharge." Reid, 790 F.2d at 460. Thus, the rules of conduct and the language in the handbooks referring to those rules do not detract in any way from the at-will language in the tear-out page and do not raise a jury issue as to an implied just cause contract.
 
 
 34
 Contrary to plaintiff's assertion, this is not a case that falls within the holding of Dalton v. Herbeck Egg Sales Corp., 164 Mich.App. 543, 547, 417 N.W.2d 496, 498 (1987), that conflicting policy manual statements of at-will status and "just cause" limitations require jury consideration. The tear-out page of the handbook received by plaintiff unequivocally established that "employment is terminable at will," and there is no conflicting language in the handbook similar to that relied upon in Toussaint, which promised "to release employees for just cause only." Toussaint, 408 Mich. at 617, 292 N.W.2d at 893.[5]
 
 
 35
 For the foregoing reasons, the order of the district court is AFFIRMED.
 
 
 
 [1]
 Although Fussell never received the revised handbook, she relies on its language referencing the separate rules document: "The purpose of these rules is not to restrict the rights of anyone but to define and protect the rights of everyone." (App. 43). Plaintiff also points to another section of the revised handbook where it states that "[a] Supervisor has the authority to act in the interest of the company, including, but not limited to ... suspending and/or terminating employees who violate policies...." (App. 38-39) (plaintiff's emphasis). The section referring to the rules also suggests that the rules may be less than comprehensive, for it states that "[w]hen a situation develops that is not covered by a written rule, you are expected to use common sense." (App. 43)
 
 
 [2]
 Although Fussell raises a promissory estoppel theory when she says she relied on policy statements and oral representations made by Health Care, these alleged expressions of policy were made subsequent to her acceptance and continued employment with Health Care. Reliance other than simply accepting and continuing employment is necessary for an estoppel claim in wrongful discharge actions. Dumas v. Auto Club Ins. Ass'n, 168 Mich.App. 619, 639, 425 N.W.2d 480, 490 (1988), appeal denied, 434 Mich. 911, 462 N.W.2d 751 (1990)
 
 
 [3]
 Although Fussell contends that she was told the rules required a three-stage disciplinary procedure before termination, she points to no portion of the rules, or any other portion of the record submitted on appeal, which sets forth such a disciplinary procedure. Nor can we find any. Where a claim of "legitimate expectations" is based on an employer's alleged oral representation that a pre-discharge grievance procedure applies to terminations, but no evidence of record establishes that such a procedure is applicable, summary judgment is properly entered. See Elsey v. Burger King Corp., 917 F.2d 256, 280 (6th Cir.1990). Although the revised handbook sets forth a formal complaint procedure through which nonprobationary employees may obtain review of discharge decisions, this is not a pre-discharge procedure and sets forth no substantive guidelines for measuring the merits of the complaint. (App. 46). Fussell makes no assertion that she attempted to obtain such post-discharge review
 
 
 [4]
 In addition, the tear-out page states that nothing in the rules, policies, terms, and conditions of the original handbook "in any way creates an express or implied contract of employment between the Company and me."
 
 
 [5]
 Even if we were to read the handbooks and rules of conduct as sending conflicting signals concerning at-will status, our rejection of Dalton in Pratt, 855 F.2d at 1234 n. 11, indicates that the at-will declaration in the tear-out page is sufficient to sustain summary judgment in favor of defendant. See also Elsey v. Burger King Corp., 917 F.2d 256 (6th Cir.1990)